## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 21 2016, 10:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Julie C. Dixon
Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Michael A. Wilkins
Broyles Kight & Ricafort, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

B. L.,

*Appellant-Respondent,*

v.

J. S.,

*Appellee-Petitioner.*

July 21, 2016

Court of Appeals Cause No.
30A01-1502-DR-59

Appeal from the Hancock Superior
Court

The Honorable Daniel Pfleging,
Special Judge

Cause No. 30D01-1101-DR-149

**Riley, Judge.**

## STATEMENT OF THE CASE

In this consolidated appeal, Appellant–Respondent, B.L. (Father), appeals the trial court orders which allowed Appellee-Petitioner, J.S. (Mother), to relocate, denied him additional parenting time, and found him in contempt of a prior parenting time order.

We affirm.

## ISSUES

Father raises three issues in this consolidated appeal, which we restate as the following:

(1) Whether the trial court abused its discretion in allowing Mother to relocate;

(2) Whether the trial court abused its discretion by not granting Father additional parenting time; and

(3) Whether the trial court abused its discretion by holding Father in contempt.

## FACTS AND PROCEDURAL HISTORY

Mother and Father were married on June 24, 2007, and in December 2007, K.L. (the Child), was born. On January 26, 2011, Mother filed for dissolution of her marriage to Father. On October 18, 2011, the trial court issued its Order on Findings of Facts Regarding Final Contested Issues (October 2011 Order). In that order, Mother was awarded temporary possession of the marital residence as well as temporary physical custody of the Child. On July 26, 2012,

the trial court entered its Final Judgement and Decree for Dissolution of Marriage, in which it incorporated the October 2011 Order. As part of the July 26, 2012 order, parenting time was governed by the Indiana Parenting Time Guidelines (Guidelines), except that Mother would have the Child every Memorial Day weekend, and Father every Labor Day weekend. In addition, the order provided that Father would have the Child on Wednesday and Friday, and the parties would exercise additional parenting time, as long they did not infringe on the other party's parenting time. The record shows that the parties continued to litigate issues with respect to the dissolution decree through 2013, including a motion to correct error, an appeal, remand on appeal, and mediation to resolve same.

[5] Additionally, the parties engaged in a very litigious post-decree parenting time allocation. On January 23, 2013, Mother filed a contempt petition with regards to the October 2011 Order. Mother alleged that Father had violated the parenting time by picking up the Child several times from preschool, on times not designated to him, and exercising parenting time while she was at work. Specifically, Mother claimed that on December 12, 2012, Father picked up the Child from preschool at 11:30 a.m. and took her out for lunch. Thereafter, Father texted Mother stating that he would be taking the Child to the Children's Museum. Again on January 4, 2013, Father had lunch with the Child and subsequently removed the Child from preschool between 12:15 p.m. to 5:00 p.m. Also, on January 11, 2013, without informing Mother, Father picked up the Child for the weekend at approximately 8:00 a.m. Finally, on

January 21, 2013, Father took the Child from preschool at around 8:30 a.m. without Mother's permission. On that day, Father texted Mother at around 11:30 a.m. indicating that the Child was with him, and he sent an additional text at 2:00 p.m. stating that he was going to That Fun Place in Greenfield, Indiana.

[6] On March 12, 2013, the parties filed their Agreed Entry regarding pick-up and drop-off times for the Child. Pursuant to the Agreed Entry, parties were to provide each other with notification by 5:00 p.m. of the day prior, as to any changes with respect to the Child's pick-up or drop-off. Six days later, on March 18, 2013, Mother filed another contempt petition, alleging that Father had violated the Agreed Entry. Mother stated that she had joined the YMCA, and on Monday evenings she worked out at the gym and placed the Child in the YMCA child care center. Mother stated that on March 11, 2013, when she and the Child arrived at the gym, Father was waiting inside. Father expressed to Mother that he was going to take the Child to get a bagel, and Mother stated that it was her time with the Child. At that point, Father took the Child's hand and started leading her out. Mother intervened by telling Father that the Child needed to go to the bathroom. While in the bathroom, Mother called her attorney and was advised to go home. On the way home, the Child cried and was upset by the whole incident.

[7] The Child was born in Fishers, Indiana. The parties moved to Fortville, Indiana when she was approximately one and one-half years old. The parties wish was to raise the Child in a rural setting. Prior to moving to Fortville,

Mother had lived and worked in Fishers. The Child had also attended daycare and preschool in Fishers for the first five years of her life. In 2013-2014, while the Child was in preschool, and again in 2014-2015, while the Child was in first grade, she was enrolled in the YMCA afterschool program. The program offered physical fitness activities, snacks, social time, homework time, and a broad range of crafts and special activities.

[8]     Following the parties' divorce, Father purchased land approximately one mile from Mother's residence and built a home. On July 17, 2013, Father filed notice of his intent to move. On August 23, 2013, Father filed his verified petition seeking additional parenting time instead of having the Child placed in an afterschool program. Three days later, on August 26, 2013, the trial court issued an *ex parte* order permitting Father to exercise additional parenting time whenever Mother was at work, but on condition that he returned the Child to preschool in time for Mother's normal pick up time. On September 10, 2013, Mother filed a motion to vacate the *ex parte* order issued on August 26, 2013. Also on the same day, Mother filed notice of her intent to relocate to Fishers. Mother stated that she wanted to be closer to work, the Child's activities were in Fishers, she did most of her shopping in Fishers, and it was becoming more difficult to maintain the thirteen acre property surrounding her home. Also, Mother claimed that it would be in the Child's best interest to live in a neighborhood where other children were present. On October 30, 2013, Father filed his objection thereon, arguing that Mother's move was an attempt to erode his relationship with the Child, and that relocation was not in the Child's best

interests. Based on that, Father requested adjustment of parenting time, and an order preventing relocation, or, in the alternative, for an entry of a preliminary order preventing relocation. On the next day, Mother filed a verified petition for clarification of additional parenting time and miscellaneous issues regarding Father's parenting time. In that petition, Mother claimed that the Child was in the top weight category for her age and she did not get much physical exercise. Mother alleged that since September 2013, Father would pick the Child up from school almost on a daily basis, or have the Child take the bus to Father's new home. Mother stated that the Child would stay with Father until Mother returned from work. According to Mother, Father would allow the Child to eat unhealthy snacks and remain sedentary while he worked. Mother also claimed that Father failed to notify her numerous times, in advance, of his plans with the Child after school. In addition, Mother alleged that Father returned the Child at 6:30 p.m. on Sundays instead of the agreed 6:00 p.m. drop-off and the Child's homework would be not be completed.

[9] On March 18, 2014, Mother filed a petition requiring Father to take the Child to activities during his parenting time, ensure that the Child's homework was finished, and to keep her apprised as to Child's whereabouts. On May 15, 2014, Father filed a verified petition requiring Mother to include him on the pickup list at school, to modify the existing physical and legal custody, or, in the alternative, expand his parenting time. On May 22, 2014, Mother filed her response, along with several other responses to the pending motions. On June

26, 2014, the trial court issued an Order (June 26th Order) on hearing stating, in part

> 2. Mother shall add Father to the pickup list, subject to Father's parenting time order. The fact that Father is on the pickup list does not give him carte blanche authority to pick up [the Child]. The parenting time order, in paragraph no. 4 of this Order is Father's parenting time.
>
> ****
>
> 4. On an interim basis, Father's parenting time is modified during the school year as follows: Father shall have mid-week parenting time on Tuesdays and Wednesdays from 4:00 p.m. to 8:30 p.m. Father's parenting time on his weekends with [the Child] shall begin when school is out on Friday. Father shall continue to have holidays and extended parenting time as previously ordered. The aforesaid modification of parenting time during the school year may be revisited at the hearing in October of 2014.

(Appellant's App. pp. 140-41).

[10] On October 21-22, 2015, the trial court heard evidence on Mother's notice of intent to move, Father's objection on the same, Mother's verified petition for clarification of additional parenting time and miscellaneous issues regarding Father's parenting time, and finally, Mother's verified petition for order requiring Father to take the Child to activities during his parenting time and ensure that the Child's homework is completed, and to keep Mother appraised on the Child's whereabouts. At the request of Father, on January 15, 2015, the trial court issued findings of facts and conclusions of law thereon, ordering that

1. Mother may relocate to Fishers, Indiana.

2. The parties shall continue to have joint legal custody and Mother shall continue to have primary physical custody of [the Child].

3. Father shall exercise parenting time as follows:

   a. Every other weekend from Friday after the end of the school day until Sunday at 6:30 p.m.

   b. Every Tuesday and Wednesday from 4:00 p.m. until 8:30 p.m.

   c. Holidays shall be pursuant to the [] Guidelines, with the exception that Mother shall have [the Child] every Memorial Day weekend and Father shall have [the Child] every Labor Day weekend in order to accommodate family events, as previously ordered in the *Order on Findings of Facts Regarding Final Contested Issues,* entered on October 18, 2011.

6. Each party shall purchase clothing for [the Child] and have that clothing in their respective homes to eliminate a clothing exchange. Any clothing that [the Child] wears from one house to another shall be cleaned and returned at the next exchange of [the Child] between the parties.

7. Father shall take [the Child] to her extracurricular activities, which occur during his parenting time, unless there is an emergency or a special event. If Father is taking [the Child] out-of-town to visit relatives for the weekend, he shall travel after [the Child's] extracurricular activity.

8. Each party shall make sure that [the Child's] homework is completed during their respective parenting time.

9. Each party shall respond [to an hours] email from the other party within twenty-four (24) hours.

10. Each party shall respond to a text message from the other party within two (2) hours.

(Appellant's App. pp. 43-50). Father timely filed his notice of appeal on February 16, 2015.

[11] There were several contempt petitions filed by Mother. Relevant to this appeal is Mother's contempt petition filed on December 22, 2014, asserting that Father had failed to comply with the June 26th Order regarding his parenting time. As noted above, the June 26th Order allowed Father to pick up the Child from school. In addition, Father had midweek parenting time on Tuesdays and Wednesdays from 4:00 p.m. to 8:30 p.m. At the contempt hearing, Mother argued that on November 23, 2014, she contacted Father via email and requested that he pick up the Child on November 25, 2014 at around 3:30 p.m. and take her to the dentist. On that day, Father picked the Child at 2:00 p.m., and he failed to notify the school or Mother, that he had picked up the Child. The Child's birthday was December 4th, and according to the Guidelines, Father was meant to have the Child between 5:00 p.m. and 8:00 p.m. Mother offered Father additional parenting time from 4:00 p.m. up until 8:30 p.m. Mother alleged that Father emailed her stating that he would be picking up the Child from school at 2:00 p.m. On Tuesday December 16, 2014, Father again picked up the Child at 2:00 p.m. instead of the usual 4:00 p.m. On the following day, Wednesday December 17, 2014, Father sent a message to

Mother informing her that he would be picking up the Child at 2:00 p.m. that day in order to work on the Child's homework, attend the fitness center, and visit the Christmas lights. Mother claimed that there was a Christmas rehearsal scheduled at 2:30/2:45 p.m. at the YMCA afterschool. Mother emailed Father regarding the rehearsal and Father responded by stating that the Child "will be unable to attend today but I will work with [the Child] on her Christmas items and completing her homework." (Appellant's App. p. 145)

[12] On February 10, 2015, the trial court conducted a hearing on Mother's contempt petition. At the close of the evidence, the trial court found Father in contempt for failing to comply with the June 26th Order prohibiting him from picking up the Child on times not designated on his parenting time schedule. Father filed his notice of appeal with respect to the contempt order on May 18, 2015. On May 29, 2015, Father filed a motion to consolidate his appeals with regard to the order allowing Mother to relocate and denying him additional parenting time, and the contempt sanction stemming from the parenting time order of June 26th.

[13] Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[14] Where the trial court has entered special findings of fact and conclusions thereon, our court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to

judge the credibility of the witnesses." Ind. Trial Rule 52(A). Under our well-established, two-tiered standard of review, we must determine whether the evidence supports the findings and whether those findings support the judgment. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. We consider the evidence most favorable to the trial court's judgment, and we do not reweigh evidence or reassess the credibility of witnesses. *D.C. v. J.A.C.*, 977 N.E.2d 951, 954 (Ind. 2012). We will find clear error only if "the record does not offer facts or inferences to support the trial court's findings or conclusions of law." *Rogers v. Rogers*, 876 N.E.2d 1121, 1126 (Ind. Ct. App. 2007), *trans. denied*.

[15] In the instant case, at the request of Father, the trial court entered its findings of fact and conclusion of law with respect to Mother's verified notice of intent to move, Father's objection on Mother's relocation and his motion for order to prevent relocation, Father's verified petition to modify physical and legal custody or in the alternative expand Father's parenting time. When a party requests special findings and conclusions thereon, "we may affirm the judgment on any legal theory supported by the findings." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011).

[16] In conjunction with the Trial Rule 52 standard, there is a longstanding policy in our State that appellate courts should defer to the determinations of trial courts in family law matters. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We accord this deference because trial courts directly interact with the parties and are thus in a superior position "to assess credibility and character through both factual

testimony and intuitive discernment." *Id.* Conversely, "appellate courts 'are in a poor position to look at a cold transcript of the record [] and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C.*, 977 N.E.2d at 956-57 (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

## I. *Relocation*

[17] Father first asserts that Mother failed to satisfy her burden of proof that the proposed relocation is in good faith and for a legitimate purpose. Under Indiana's relocation statute, there are two ways for a non-custodial parent to object after receiving notice that the custodial parent intends to relocate: by filing a motion to prevent the relocation or by filing a motion to modify custody. *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011), *reh'g denied*. *See* Ind. Code §§ 31-17-2.2-1,-5. Following a motion to prevent relocation, the relocating parent must prove "that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the court finds a good faith, legitimate purpose for the relocation, the burden then shifts to the non-relocating parent to demonstrate "that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d). If the non-relocating party fails to object, the custodial parent is permitted to relocate with the Child. I.C. § 31-17-2.2-5(e).

[18] Because there is no explicit criteria for determining whether a relocation is in good faith and for a legitimate reason, our court has generally required that the

moving parent demonstrate an objective basis—that is, "more than a mere pretext"—for relocating. *T.L.*, 950 N.E.2d at 787. It is commonly understood in today's society that individuals move in order to live closer to family members, for financial reasons, and for employment opportunities. *Id.* at 788. As such, "[w]e infer that these and similar reasons . . . are what the legislature intended in requiring that relocation be for 'legitimate' and 'good faith' reasons." *Id.*

[19]     Following the parties' divorce, Father moved out of the marital home, purchased land about one mile from the Mother's home, built a house, and filed his notice to move on July 17, 2013. Less than two months after Father's notice, Mother filed her notice to relocate to Fishers. At trial, Mother summarized her reasons for relocating as follows

> [O]nce [the Child] started school, I started realizing how much driving and how much time there was back and forth between work and [the Child's] school. And so [] I started thinking about how much it was to maintain the property on my own. When [] we originally bought the property, I thought that I was going to live there with a husband and a family, and it was going to be bigger. But, over time I realized the house was very big. We were barely using the basement. There were like 13 acres of property to maintain, and it felt like everything we were doing was back in the Fishers area. So, lots of the shopping and my work and dentists and doctors, and it just felt like there was a lot more going on in Fishers. In addition,. . . it's very hard to get out in the evening to exercise like you-so I have a desire to live in a neighborhood where you could go out and you could ride a bike and walk and have interaction with other people and kids and it would not be so secluded as where we're at. So, there's a variety of reasons.

(Transcript pp. 83-84). In addition, Mother testified that the relocation was not intended to thwart Father's efforts to spend more time with the Child. Specifically, Mother stated that the proposed move was only twenty minutes from Father's residence and would not interfere with any of his parenting time, or make it unreasonably difficult for him to pick up the Child after school, attend church, or participate in the Child's other activities.

[20] At the time of the relocation hearing, the Child was enrolled in Eden Elementary School in Greenfield, Indiana. Father volunteered at the Child's school to teach the children how to tell time and math skills. Father also had lunch with the Child every Friday at school. Father had signed up the Child for basketball in Greenfield. On Tuesdays, Father and the Child reviewed the Child's homework, got a snack, and went to the library. On Wednesday, Father and the Child went to a fitness center, and thereafter attended church in Fishers. On the weekends, Father would pick up the Child at school on Friday and they often would visit Father's family in Illinois. Father had a flexible work schedule which allowed him to work from home, and would not be tied to his residence for work.

[21] On the relocation issue, the trial court concluded, in relevant part

> (1) The distance involved in the proposed change of residence is minimal as it is only twenty (20) to twenty-five (25) minutes driving time.
>
> (2) The hardship and expense involved for Father to exercise parenting time is minimal. Father will be able to continue to exercise the same parenting time. There will also be minimal expense involved in

exercising parenting time as the anticipated drive between the parties' residences will be approximately twenty (20) to twenty-five (25) minutes.

(3) The feasibility of preserving the relationship between Father and [the Child] through suitable parenting time, including consideration of the financial circumstances of the parties, is excellent. The anticipated distance between the parties' homes is minimal and the anticipated distance between Father's home and [the Child's] school will be approximately twenty (20) to twenty-five (25) minutes. Both parties have financial resources such that the expense of the increase in driving time is not a consideration.

(4) There is not an established pattern of conduct by Mother, to thwart Father's contact with the child. Father has had ample additional parenting time in the past, in addition to his regular parenting time.

(5) The reasons provided by:
(A) Mother for seeking relocation are legitimate and in good faith; and
(B) Father for opposing the relocation of [the Child] failed to show that the proposed relocation is not in the best interest of [the Child].

****

(6) b. Pursuant to I.C. 31-17-2.2-5(c), Mother has met her burden of proof that the proposed relocation is made in good faith and for a legitimate reason.

c. Pursuant to I.C. 31-17-2.2-5(d), because Mother met her burden of proof, the burden shifted to Father to show that the proposed relocation is not in the best interest of [the Child]. The Court finds that Father has failed to meet his burden of proof that the proposed relocation is not in the best interest of [the Child].

(Appellant's App. p. 48).

[22] Father argues that the trial court's conclusions "do not address whether Mother's relocation is in good faith and for a legitimate purpose, but merely how Father will be affected by the relocation." (Appellant's Br. p. 25). Specifically, Father argues that Mother has not met her "burden of proof such that the trial court should properly consider the resulting consequences and circumstances of the relocation itself, as same is not proof or dispositive in determining if relocation is in good faith and for a legitimate purpose." (Appellant's Br. p. 25). In addition, Father argues in his appellate brief that Mother does not go shopping frequently, and she only goes to the doctors and dentists for herself and the Child a couple times a year. He further claims that similar activities that Mother signed up the Child up for, or attends in Fishers, are also available in the Fortville area; and that he had also signed the Child up for basketball and at a fitness center in Fortville. Despite Mother's assertion that she had to maintain the thirteen acres, Father claims that Mother leases eight of the thirteen acres of land for farming and she only cares for two. In addition, Father contends that Mother's work is approximately thirty to forty minutes from their former marital residence, and upon relocation, her commute would be lengthened due to busy traffic.

[23] Father's argument amounts to nothing more than his disagreement with the trial court's conclusion, and an attempt to convince this court to impermissibly substitute its judgment for the judgment of the trial court. At the relocation hearing. Mother's testimony from the divorce hearing that she desired to live in that home with the Child, was introduced. However, at the relocation hearing,

Mother indicated that her circumstances had since changed and she no longer wanted to live there. Specifically, Mother stated that she was overburdened by the huge home, and could no longer maintain the thirteen acre property surrounding the residence. In addition, Mother pointed out that many of her activities, such as her work, stores, doctors, and dentists, were located in Fishers. Also, Mother stated that she preferred a neighborhood setting where she and the Child could exercise in the evenings and interact with people.

[24] As our court has recognized, if "the requirement of a legitimate and good faith reason[ ] posed an inordinately high bar for a relocating parent to meet, it could too often prevent trial courts from . . . appropriately deciding the dispute based on the best interests of the affected child." *T.L.,* 950 N.E.2d at 788. Even so, we recognize that it would render the relocating parent's burden of proof meaningless if we were to accept as legitimate "any stated reason that is not an outright admission that the parent is relocating to interfere with the other parent's rights." *Gilbert v. Gilbert,* 7 N.E.3d 316, 326 (Ind. Ct. App. 2014).

[25] In light of the forgoing, and notwithstanding any evidence indicating that Mother's relocation was in bad faith and for the purpose of distancing the Child from Father, the record supports the finding that Mother legitimately desired to live in the Fishers area. It was the prerogative of the trial court to accord more weight to the evidence favoring Mother, and it is not the role of this court to reweigh evidence or assess witness credibility. *In re Paternity of X.A.S.*, 928 N.E.2d 222, 224 (Ind. Ct. App. 2010), *trans. denied.* Accordingly, we find there

is sufficient evidence to support the trial court's finding that Mother's relocation to Fishers was in good faith and for a legitimate purpose.

## II. *Additional Parenting Time*

Next, Father argues that the trial court abused its discretion by ordering that the Child should attend the afterschool program at the YMCA, rather than allowing him additional parenting time. Father claims that the trial court's conclusion is "unsupported by any law in Indiana, and impermissibly places the Child in the care of a third party, notwithstanding the fitness and availability of a natural parent." (Appellant's Br. p. 13).

The Parenting Time Guidelines discuss the opportunity for additional parenting time by allowing the non-custodial parent the right of first refusal to provide child care:

> *Opportunity for Additional Parenting Time*. When it becomes necessary that a child be cared for by a person other than a parent or a family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost.

Ind. Parenting Time Guideline § I(C)(3). The commentary to this subsection explains:

> The rule providing for opportunities for additional parenting time promotes the concept that a child receives greater benefit from being with a parent rather than a child care provider. It is also intended to be practical. When a parent's work schedule or other regular recurring activities require hiring a child care provider, the other parent should

be given the opportunity to provide the care. Distance, transportation or time may make the rule impractical. Parents should agree on the amount of child care time and the circumstances that require the offer be made.

[28] The Guidelines imposition of a preference for parental childcare is founded upon the premise that it is usually in a child's best interest to have frequent, meaningful, and continued contact with each parent. *Shelton v. Shelton,* 835 N.E.2d 513, 517-18 (Ind. Ct. App. 2005), *summarily aff'd,* 840 N.E.2d 835 (Ind. 2006). It is presumed that the Guidelines apply in all cases which they cover; however, a trial court may, within its discretion, determine that a deviation is necessary or appropriate. *Id.* Any such deviation must be accompanied by a written explanation. *Id.*

[29] In his appellate brief, Father now argues that

> The trial court impermissibly equates statutorily mandated education with work related daycare as it is shrouded in the cloak of an "enrichment program" when it is nonetheless after school daycare for working parents. There is no law supporting the conclusion and Order by the trial court that [the Child] should be cared for by a third party rather than a natural parent if he or she is available, which Father is. In fact, the law supports the opposite conclusion. Namely, it is presumed in the Child's best interests to be cared for by a natural parent rather than a third party, both under the IPTG and substantial case law analyzing third party custody and grandparent visitation case. It appears that the trial court may have relied on fact that the after school program offers recreational and learning opportunities that parents may not offer, and that same is 'better' for [the Child]. However, simply because a third party may offer better things a court may not place a child with a third party over a fit natural parent. Moreover, Father offers the same types of activities to [the Child] when he provides after school care, such as sports and recreation, snacks, and homework time.

(Appellant's Br. p. 14). With regards to the YMCA afterschool program, the trial court entered the following findings

> 20. [The Child] is currently enrolled in the YMCA After School Enrichment Program, an Indianapolis program. [The Child] attends the program until 4:00 p.m. on Tuesdays and Wednesdays until Father picks her up . . .
>
> 21. The YMCA After School Enrichment Program has one (1) hour scheduled for the children to do their homework. There is staff available to assist with the homework. The program has weekly learning projects, and charitable projects focusing on giving to others. The children participate in crafts, cooking, outdoor activities, play time and physical activities.
>
> 22. During the 2013-2014 After School Enrichment Program, [the Child] played mostly with the boys, with Legos or followed the adults around. [The Child's] attendance was limited because of the time she spent with Father.
>
> 23. In the 2013-2014 school year, [the Child] developed social skills, plays with girls and boys, plays different games. The YMCA After School Enrichment Program has been beneficial to [the Child].
>
> ****
> 26. In the 2013-2014 school year, Father failed to ensure that [the Child's] homework was completed. The After School Enrichment Program provides time for the children to complete their homework.
>
> 27. [The Child] missed one homework assignment this school year. This occurred while [the Child] was with Father and Mother was in Hawaii.
>
> ****
> 31. Father contends Mother is attempting to deny him additional parenting time. Mother contends he has had substantial additional parenting time since the divorce was final.

32. Father has had additional parenting time almost every day after school during the 2013-2014 school year, when Mother preferred that [the Child] attend the YMCA After School Enrichment Program.

(Appellant's App. pp. 44-45).

[30]     As noted above, the preamble of the Guidelines notes that deviations from these Guidelines by either the parties or the court must be accompanied by a written explanation. The requirement for a written deviation rests upon the concept of appellate review. By requiring the trial court to proffer an explanation for its departure from the Guidelines, we not only force the trial court to reflect upon the possible consequences of its change from the normal parenting time, we also enable our courts to thoroughly and appropriately review the trial court's deviation and the reasons behind it.

[31]     In the instance case, the trial court concluded that although the Child is well bonded with Father, she would benefit from the YMCA afterschool program, and it stated, in part, that "[A] big part of parenting is to ensure that a child is exposed to a wide variety of opportunities and activities." (Appellant's App. p. 49). The trial court further concluded that "[I]t is in [the Child's] best interest to attend the YMCA After School Enrichment Program, or a similar program, because she participates in programs that encourage healthy eating and exercise. The YMCA enrichment program also provides assistance to the [Child's] homework." (Appellant's App. p. 49).

[32]     Here, the trial court clearly considered the possibility of allowing Father to exercise additional parenting time but decided it was in the Child's best interest

to attend the afterschool program instead of spending every available moment with Father. The Child would exercise, interact and play with other children, and she would also get her homework done. Under these circumstances, the trial court did not abuse its discretion for not awarding Father additional parenting time as requested.

### III. *Contempt*

In order to be held in contempt for failing to follow a court's order, a party must have willfully disobeyed the order. *City of Gary v. Major,* 822 N.E.2d 165, 170 (Ind. 2005). "The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." *Ind. High Sch. Athletic Ass'n v. Martin,* 765 N.E.2d 1238, 1241 (Ind. 2002). "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order." *Id.* "Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith." *Id.* (citing *Bowyer v. Ind. Dep't of Natural Res.,* 798 N.E.2d 912, 918 (Ind. Ct. App. 2003)). The determination of whether a party is in contempt of court is a matter left to the trial court's discretion. *Id.* at 171. We will reverse a trial court's finding of contempt only where there is no evidence or inferences therefrom to support it. *Id.* As with other sufficiency matters, we will neither reweigh evidence nor judge witness credibility. *Mitchell v. Mitchell,* 871 N.E.2d 390, 394 (Ind. Ct. App. 2007).

The entire premise of Father's argument is that the trial court never issued an order limiting his ability to pick up the Child at times other than his designated

parenting time. Specifically, Father argues that "the parties were still operating under the prior Orders of January 23, 2013 and September 11, 2013, and their Agreed Entry of March 12, 2013." (Appellant's Br. p. 35). We find this premise is incorrect.

[35] Following the parties' divorce, the trial court entered the October 2011 Order. In that order, the parties had agreed that parenting time would be pursuant to the Guidelines, except that Mother would have the Child every Memorial Day weekend, and Father, every Labor Day weekend. Also, the order stated that Father would have additional parenting time with the Child on Wednesday and Friday, and further additional parenting time as long he did not infringe on Mother's parenting time. On January 23, 2013, Mother filed a contempt petition with regards to the October 2011 Order, arguing that Father had violated the parenting time order for picking up the Child on December 12, 2012, January 4, 2013, January 11, 2013, and January 21, 2013, and exercising parenting time while she was at work. On March 12, 2013, the parties filed their Agreed Entry regarding notification and Father's parenting time. Specifically, the Agreed Entry stated that Father may retrieve the Child from preschool if Mother was at work, and that the parties should notify each other if there was a deviation from the regular parenting time, or a change with the Child's drop-off or pickup times. In addition, the parties were to give each other a days' notice, through text or phone call, as to any change to the Child's pickup or drop-off by 5:00 p.m. Six days after the Agreed Entry was filed, Mother filed a contempt petition against Father, alleging that Father appeared

at the YMCA to take the Child for a treat and it was Mother's time with Child. On September 11, 2013, the trial court issued an order resolving Mother's several pending contempt citations, including Mother's contempt petition for the YMCA incident. The trial court concluded that it was possible for Father to have misunderstood that prior orders allowed him to exercise additional parenting time while the Child was in daycare, however, because the Child was enrolled in preschool, Father's additional parenting time no longer applied.

[36] As noted above, On June 26, 2014, the trial court issued the June 26th Order, directing Mother to add Father to the pickup list. Despite being added to the pickup list, the trial court caution that this did not give Father "carte blanche authority" to pick up the Child from school, other than the times specified in his parenting time schedule. (Appellant's App. p. 141). Specifically, Father was allowed to have mid-week parenting time on Tuesdays and Wednesdays from 4:00 p.m. to 8:30 p.m. In addition, Father's weekend parenting time was to begin Friday when school was out.

[37] At the contempt hearing, Mother claimed that Father picked the Child up on at least four occasions. Specifically, Mother claimed that on November 25, 2014, the Child was scheduled to go to the dentist at 3:30 p.m. but Father picked up the Child up at 2:00 p.m. from school. On December 4, 2014, it was the Child's birthday and Father was to have Child between 5:00 p.m. and 8:00 p.m. Mother offered Father additional parenting time from 4:00 p.m. until 8:30 p.m., however, Father emailed Mother stating that he would be picking the Child up from school at 2:00 p.m. On Tuesday December 16, 2014, Father again picked

the Child up from school at 2:00 p.m. instead of 4:00 p.m. The next day, Wednesday December 17, 2014, Father sent a message to Mother informing her that he would be picking the Child up from school at 2:00 p.m. that day, rather than 4:00 p.m.

[38] Here, the trial court stated that Father was in violation of the June 26th Order. It is undisputed that Father removed the Child from school before his scheduled parenting time on at least four occasions. Father simply ignores the June 26th Order in his argument, insisting that he has the right to pick up the Child at times other than his designated parenting time. It is beyond dispute that the trial court had issued the order before the incidents in question and that the June 26th Order was intended to prevent the type of conduct that resulted in the trial court's contempt finding. Accordingly, we conclude that that the trial court did not abuse its discretion by finding Father in contempt.

## CONCLUSION

[39] Based on the foregoing, we conclude that the trial court did not abuse its discretion by allowing Mother to relocate, denying Father's request for additional parenting time, or by finding Father in contempt for violating a prior parenting time order.

[40] Affirmed.

[41] Kirsch, J. and Pyle, J. concur