# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 27 2019, 10:15 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Lauren E. Harpold
Lainie A. Hurwitz
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

L.B.,

*Appellant-Respondent,*

v.

M.B.,

*Appellee-Petitioner*

November 27, 2019

Court of Appeals Case No.
19A-DC-993

Appeal from the Hamilton
Superior Court

The Honorable Jonathan M.
Brown, Judge

Trial Court Cause No.
29D02-1706-DC-5218

**Crone, Judge.**

## Case Summary

[1] L.B. ("Mother") appeals the trial court's findings of fact, conclusions thereon, and order ("the Order"), granting M.B. ("Father") sole legal custody for

medical decisions regarding their minor children, An.B., W.B., and As.B. ("the Children") and ordering that the Children be vaccinated according to the recommendations of the American Academy of Pediatrics ("AAP"). Mother asserts that the trial court abused its discretion in excluding one of her expert witnesses and committed clear error in granting Father sole legal custody as to medical decisions and ordering that the Children be vaccinated. We conclude that the trial court did not abuse its discretion in excluding one of Mother's expert witnesses and that the trial court's decision to grant Father sole legal custody as to medical decisions is not clearly erroneous. Further, given that Father wants the Children to receive vaccinations, any error in the trial court's order that the Children be vaccinated is harmless. Accordingly, we affirm.

## Facts and Procedural History

[2] The undisputed findings of fact and the evidence most favorable to the trial court's judgment show that Mother and Father were married in August 2002. An.B. was born in July 2006, W.B. was born in August 2008, and As.B. was born in January 2015. All three Children have health issues. An.B. has a history of food allergies, W.B. is diagnosed with Down's Syndrome, and As.B. was born without a thyroid and with a congenital heart defect. Appealed Order at 3. As.B. requires the care of many specialists including an endocrinologist, pulmonologist, cardiologist, and a cranial facial team. Dr. Kristen Gollnick is the Children's pediatrician. Dr. Damir Matesic is An.B.'s allergist. Dr. Zeina Nabhan is W.B.'s and As.B.'s pediatric endocrinologist. Dr. Catherine Rupp is a medical doctor who provided uninsured alternative allergy treatments to

An.B. starting in September 2016 and became involved in the Children's thyroid care in October 2016. Dr. Rupp is not an endocrinologist. Dr. Casey Delcoco (formerly Reising) is a medical doctor Mother selected during the pendency of the case to oversee As.B.'s and W.B.'s thyroid care and simultaneously serve as the Children's primary care provider with Dr. Gollnick. Dr. Delcoco is not an endocrinologist.

[3] Until 2015 or 2016, the Children received scheduled vaccinations pursuant to the AAP. None of the Children experienced negative reactions due to the vaccinations they received. *Id.* at 61. However, Mother decided that she no longer wanted the Children to be vaccinated and began seeking various alternative medications and therapies. Mother sought and received a vaccine medical exemption for the Children from Dr. Rupp. Father wants the Children to continue to be vaccinated and disagrees with the general direction Mother has taken regarding the Children's healthcare.

[4] On June 5, 2017, Father filed a petition to dissolve the parties' marriage. On August 30, 2017, the trial court approved the parties' agreed provisional order, in which Mother and Father agreed to share legal and physical custody of the Children except as to their medical care and to undergo a custodial evaluation with Dr. Linda McIntire. Appellant's App. Vol. 2 at 22. They also agreed that they had "differing and substantial views regarding the medical and health needs" of the Children and that they would maintain the status quo regarding the Children's medical care until the final hearing. *Id.* On March 2, 2018, Dr. McIntire filed her custody evaluation with the trial court.

On April 24, 2018, Father filed a motion to enforce the agreed provisional order, alleging that Dr. McIntire had recommended counseling for An.B. and had provided a list of doctoral-level psychologists, but the parties had been unable to agree to a therapist for An.B. *Id*. at 89. Father stated that he wished to use a provider recommended by Dr. McIntire and requested the court to select a therapist. Mother filed a response. Following a hearing, on June 22, 2018, the trial court issued an order appointing a therapist for An.B. *Id*. at 103.

On July 13, 2018, Father filed a verified petition for rule to show cause, alleging that Mother had selected a new primary care provider, Dr. Delcoco, for the Children without his knowledge or consent and that Mother had not listed Father as an authorized party to receive the Children's medical information in violation of the agreed provisional order. Mother filed a response. After a hearing on August 8, 2018, the trial court found Mother in contempt of the agreed provisional order for failing to notify Father of appointments she made with Dr. Delcoco and for changing the Children's primary care provider without Father's consent. *Id*. at 115. The trial court ordered that Dr. Gollnick remain the Children's primary care provider. *Id*.

In August 2018, the parties each filed a final witness and exhibit list. Father filed a motion to exclude the testimony of three of Mother's listed expert witnesses: Dr. Alvin Moss, Dr. Rupp, and Dr. Delcoco. Mother filed a response. Following a hearing, on September 21, 2018, the trial court entered an order granting Father's motion in part and excluding Dr. Moss as a witness

on the basis that his testimony was irrelevant to the issues before the court. *Id*. at 139.

[8] On September 25, 2018, the trial court approved the parties' partial final agreement, which provided that the parties agreed to joint physical custody of the Children and joint legal custody on education and religious issues. *Id*. at 140. In addition, the partial final agreement required that Mother and Father agree to a reunification therapist to repair the relationship between Father and An.B. *Id*. at 141. On November 6, 2018, Father filed a petition to enforce the partial final agreement, alleging that Mother had failed to respond to his attempts to communicate with her to select a reunification therapist. *Id*. at 152. At a later hearing, Mother and Father agreed to the selection of a therapist.

[9] On November 29, 2018, the trial court entered a partial decree for dissolution of marriage, which granted Father's petition for dissolution of the marriage and incorporated the partial final agreement. *Id*. at 162-63. The partial decree for dissolution awarded Mother and Father joint physical custody of the Children and joint legal custody on education and religious issues and declared that the only remaining issue for the court to decide was the issue of legal custody as to medical decisions for the Children.

[10] On September 25 and 26, November 8 and 15, and December 6, 2018, the trial court heard evidence on the issues of legal custody as to medical decisions and whether the Children should receive vaccinations. Mother and Father each sought sole legal custody of medical decisions regarding the Children. Tr. Vol.

4 at 120; Tr. Vol. 6 at 237-38. Drs. McIntire, Gollnick, Rupp, and Delcoco testified. Dr. McIntire testified that in her opinion, Father should be granted sole legal custody for the Children's medical care. Dr. Gollnick testified that it was her recommendation that the Children be vaccinated in accordance with the guidelines established by the AAP and the Centers for Disease Control ("CDC"). In addition, Dr. Gollnick testified that due to As.B.'s minor heart defect, As.B. was at a higher risk for some of the diseases the vaccinations protect against.

[11] Dr. Rupp testified regarding her reasons for executing vaccine medical exemptions for the Children, but she also testified that her basis for signing the exemptions is inconsistent with the AAP guidelines and that the Children's medical history does not exempt the Children from immunizations required by the guidelines set forth by the AAP and the CDC. Dr. Delcoco testified that she had only seen the Children for two appointments and she agreed with Dr. Rupp's recommendation that the Children be medically exempt from vaccinations and explained the reasons for her agreement.

[12] The parties requested findings of facts and conclusions thereon.[1] Mother and Father each filed proposed findings and conclusions. On April 17, 2019, the trial court issued a sixty-nine-page Order granting Father sole legal custody as

---

[1] Although Father states that he requested findings of facts and conclusions thereon, the chronological case summary indicates that Mother filed a motion for findings and conclusions on August 31, 2018. Appellant's App. Vol. 2 at 8.

to the Children's medical decisions and ordering that the Children be vaccinated in accordance with the schedules set forth by the AAP or otherwise suggested by Dr. Gollnick or Dr. Stephanie Bergstein in the event that Dr. Gollnick is unavailable. The Order provides in relevant part as follows:

> 19. The record reflects that both parents are very knowledgeable concerning the medical care and needs of their children;
>
> ....
>
> 33. The parties disagree concerning the overall health care necessary for the children, including which medical providers to use or how many medical providers are necessary; whether to utilize alternative and holistic medical treatments; whether to follow recommendations of providers; whether to use out of network and uninsured providers, treatments and interventions; what type of thyroid medication should be used for [As.B.] and [W.B.]; whether over the counter pain medication should be administered; and the children's diet and use of toothpaste without fluoride;
>
> ....
>
> 43. Dr. Rupp's medical exemption suggests [An.B.] has had several anaphylactic reactions (none due to vaccinations). However, per the testimony of both parents, [An.B.] has only had two reactions when she accidentally ate food containing egg in her younger years and vomited as a result;
>
> ....

105. Dr. Catherine Rupp maintains Rupp Hollistic Health and Integrative Medicine. From her testimony and her website, Dr. Rupp is a MD, who maintains a medical practice using alternatives to western medicine and a holistic medical practice. Dr. Catherine Rupp is no longer Board Certified in Pediatrics nor Internal Medicine and she testified she does not follow the guidelines set forth by the [AAP];

106. Mother's decision to obtain a vaccine medical exemption was not at the initiation of any of the children's medical providers. ….

….

## CONCLUSIONS OF LAW

….

24. Mother and Father both believe they are fit and suitable to make medical legal custody decisions concerning the minor children, but it is apparent from the record that the parties are currently struggling to communicate effectively regarding the minor children. It does not appear they currently have the ability to work together for the best interests of their children at this time;

….

26. Evidence was presented whereby Mother and Father communicated effectively with these decisions until the past three to four years, for which their disagreements as to the medical care for the children drove a wedge into their marriage which culminated in the instant cause of action;

27.  The parties generally agree on the medical issues that concern their children, but the issue of vaccinations and thyroid medication for the minor children form the bulk of the divide for the parties;

….

30. Given these differing views, the parents are unable to cooperate to advance the children's welfare with respect to health care. Mother often seeks alternative and holistic treatments, some of which can be expensive and unnecessary. The record demonstrates that Mother tends to seek out providers to endorse her medical views or a treatment she thinks the children need. On the other hand, Father seeks to follow the recommendations of the children's on-going primary care doctor and specialists. Father objects to Mother's desire to use alternative and non-conventional therapies, medications and doctors. While Mother may be an outstanding advocate for her children's healthcare needs, it is not readily apparent whether that has netted better results or whether she is exposing her children to increased health risks;

….

35.  The record is clear that Mother has kept Father generally informed concerning the children's medical care, but there have been some situations the Court finds concerning with regards to Dr. Delcoco and Dr. Rupp. As a result, this Court questions whether Mother will be forthright with providing information to Father if she were granted sole legal custody for medical decisions regarding the minor children;

….

42. All three of the children have received some of their recommended vaccinations;

43. No evidence was presented that the children have had any negative reaction to any vaccine they have been given;

44. Though the Court has considered joint legal custody regarding medical decisions for the parties in this case, the court questions the fitness and suitability of Mother to maintain joint legal custody for medical decisions in light of the core disputes of the parties;

….

46. The Court reasonably fears that if either party has sole decision[-]making as to legal custody for medical issues, that party will not consider any input from the other parent, however, the parties were clear that neither believed joint legal custody would be appropriate for this case;

….

48. As the parties spent a majority of the marriage utilizing vaccines for their children, and as the parties now disagree on whether [to] vaccinate the children, the Court will order that all three children be vaccinated in accordance with the prescribed schedule as set forth by the [AAP];

….

53. …. Mother went behind Father's back to establish a new primary care and thyroid care provider with Dr. Delcoco for the children during the pendency of this case, when all eyes were watching. Mother failed to put the initial appointment on the

family calendar, and added [As.B.'s] thyroid appointment on the family calendar less than 24 hours before [she] was scheduled to be seen. Per Dr. Delcoco's testimony, it takes months to get into her office, and thus Mother could have easily put these appointments on the family calendar, and for reasons unknown to the Court, chose not to do so. Mother did not offer Father any specific information about Dr. Delcoco when asked;[2]

....

57. Father has demonstrated a history of cooperating with Mother, and it is clear from the record he follows the recommendations of the children's health care providers;

58. Father has demonstrated a pattern of being cooperative and compromising with Mother, even if he does not agree with a decision Mother wants to make, and he has relied on Mother's judgment for most medical decisions regarding the children;

59. Mother has not demonstrated a pattern of being fully cooperative and compromising with Father, but seems rather inflexible in her decision[-]making process. While having an opinion and standing one's ground are important, it doesn't necessarily work well in a co-parenting environment;

60. Mother has demonstrated she frequently makes unilateral medical and/or health care decisions concerning the girls,

---

[2]  Conclusion 53 also stated, "Mother was not compliant with this court's preliminary orders regarding legal custody." Appealed Order at 63.  In her reply brief, Mother argues that the trial court's determination that she was in contempt for failing to abide by the parties' agreed provisional order was improper because the order was issued on August 30, 2017, and the medical appointment in question occurred on August 28, 2017. Appellant's Reply Brief at 7-8.  Even if the agreed provisional order was issued after the appointment was made and Mother was not technically in contempt of the agreed provisional order, Mother does not dispute any other part of Conclusion 53.

knowing they are contrary to Father's wishes and sometimes against conventional norms. If the children were just Mother's, this Court would not be a barrier to Mother's wishes. However, there are two parents in this family and decision-making for healthcare in this family is going to be rebalanced;

61. Mother has demonstrated she has shut Father out of major medical decisions, even during the pendency of this case, by trying to go behind his back to establish a new primary care provider and endocrinologist for the girls; unilaterally changing their thyroid medications; and failing to compromise on the vaccination of the children, even when Father was agreeable to a slower vaccination schedule;

62. Mother asserts Father does not have in-depth knowledge or recollection of the children's medical history, and this is not supported by the record. To the contrary, despite Mother being the stay at home parent and primarily charged with the responsibilities of getting the children to their doctor appointments, Father is familiar with the children's medical care;

….

65. If both parents were granted legal custody, based on the history of this case, and the evidence before this court, it is anticipated the parties will reach an impasse on important and fundamental medical decisions relating to their children, and this Court will undoubtedly be required to intervene to resolve their on-going disputes. This court has already had to intervene three times concerning disagreements over the medical care of the children;

….

68. Mother has not been honest about the children's medical issues/history, and the Court is concerned she will continue to slant the truth in order to obtain medical care for the children which she believes is appropriate, even though inconsistent with the recommendation of doctors. For example, Mother reported to [An.B.'s] allergist (Dr. Matesic) that it was Dr. Gollnick who had concerns regarding [An.B.] taking the MMR vaccine. However, Dr. Gollnick testified she *never* gave Mother any reason to believe the vaccinations needed to be slowed down for any of the children, and continued to ask Mother at every doctor visit to schedule more shots even if Mother refused. Further, Dr. Gollnick testified it was Mother who controlled the schedules of the shots, and not Dr. Gollnick;

69. The Court questions Mother's candor. Mother was not truthful during her deposition regarding her knowledge that Dr. Gollnick had in fact declined to sign a vaccine medical exemption for the children. Mother testified during her deposition she would be speculating about Dr. Gollnick's opinion concerning the vaccine medical exemptions when in fact Mother already knew Dr. Gollnick had indeed declined to sign the exemption for specific reasons;

….

71. [The] Court does not find Dr. Rupp's certification of the girls' medical waivers legitimate. Dr. Rupp did not administer any test to support her basis for the waiver, even though testing was available to her, and did not confirm the family history with Father, who she knew did not support a medical waiver exempting the children from vaccinations. Dr. Rupp could have easily performed such tests and confirmed the family history with Father. Most significantly, none of the children have experienced a negative reaction to vaccinations, and none of the medical records reflect a concern that the children have or will experience a reaction to a vaccination. Dr. Rupp simply believes the

children could experience a reaction, but also believes any person is susceptible to a negative reaction to any treatment. Perhaps this explains Dr. Rupp's focus on natural and holistic medicine, and the decision to maintain a medical practice that sometimes prescribes treatments that are contrary to the guidelines of the [AAP] and the [CDC]. None of Dr. Rupp's fees are covered by insurance;

72. This Court finds the testimony of Dr. Gollnick most reliable, given she has been the children's treating physician for the longest period of time and thus has a comprehensive understanding of their health care needs. She follows the standard of care and guidelines set forth by the [AAP], [CDC], and the Indiana State Department of Health, and both parties continue to trust her judgment and desire for her to continue as the children's primary care provider. Dr. Gollnick is an approved provider under the children's health insurance plan;

73. This Court makes no determination regarding the medical efficacy of vaccinations, their effectiveness, or their risks. This Court has determined the children will be vaccinated based upon the desire of one of their parents, and as such, the Court orders the children to be vaccinated; and

74. As such, at this time THE COURT AWARDS Father sole legal custody for medical decisions regarding the minor children.

Appealed Order at 7, 9-10, 13, 23, 52, 58-69 (underlining in original changed to italics). This appeal ensued.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in excluding Mother's expert witness.

[13] Mother challenges the trial court's exclusion of her expert witness, Dr. Moss. The trial court is the gatekeeper for the admissibility of expert opinion under Indiana Evidence Rule 702, which provides,

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

[14] "A trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion and will be reversed only for abuse of that discretion." *Person v. Shipley*, 962 N.E.2d 1192, 1194 (Ind. 2012) (quoting *TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 216 (Ind. 2010)). "We presume that the trial court's decision is correct, and the burden is on the party challenging the decision to persuade us that the trial court has abused its discretion." *Id*.

[15] At the hearing on Father's motion to exclude, the trial court explained its reasoning for excluding Dr. Moss as follows:

> [A]s Dr. Moss hasn't treated the [Children], all Dr. Moss can do is offer this court an opinion on the efficacy of vaccinations. And as Dr. Moss has not treated any of these [C]hildren, I don't know how Dr. Moss could provide any greater assistance to this Court, than the other doctors that are expected to testify, that have actually treated the [C]hildren with regards to their health, their physical health, and their issues with regard to vaccines.

Tr. Vol. 2 at 156.

[16]  Mother contends that Dr. Moss's expertise is relevant because the vaccination issue was a "battle of the experts of whether the [C]hildren should be medically exempt from vaccinations," and "by calling the medical exemptions 'not legitimate' the trial court has implicitly conceded [that] experts regarding medical exemptions are certainly relevant to a determination in this case." Appellant's Br. at 24. Mother was permitted to call two expert witnesses, Dr. Rupp and Dr. Delcoco, both of whom were medical doctors who had seen the Children and who offered testimony specifically about the Children's health issues and whether vaccination was medically indicated for each of them. They testified that in their opinions, the Children should not be vaccinated and explained the basis for their opinions. Dr. Moss apparently had not seen or treated the Children. The trial court reasonably concluded that Dr. Moss would have nothing to add to Dr. Rupp's and Dr. Delcoco's testimony. Although Mother claims that Dr. Moss's testimony was relevant, all we can glean from her briefs is that he was going to be Mother's expert regarding "vaccinations" and was going to testify "regarding the safety and efficacy of

vaccinations." *Id.* at 21, 24. Accordingly, we cannot say that the trial court abused its discretion in excluding Dr. Moss's testimony.

## Section 2 – The trial court's decision to grant Father sole legal custody for medical decisions regarding the Children is not clearly erroneous.

[17] Mother argues that the trial court erred in granting Father sole legal custody for medical decisions regarding the Children. We observe that this Court accords great deference to trial courts in family law matters:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

[18] Here, the trial court entered findings of fact and conclusions thereon at the parties' request. Our standard of review is well established:

> Where the trial court has entered special findings of fact and conclusions thereon, our court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Under our … two-tiered standard of review, we must determine whether the evidence supports the findings and whether those findings support the

judgment. We consider the evidence most favorable to the trial court's judgment, and we do not reweigh evidence or reassess the credibility of witnesses. We will find clear error only if the record does not offer facts or inferences to support the trial court's findings or conclusions of law.

*B.L. v. J.S.*, 59 N.E.3d 253, 258-59 (Ind. Ct. App. 2016) (citations and quotation marks omitted). [3]

[19] We note that the Order contains numerous "findings" that are mere recitations of witness testimony. Findings that merely state that the testimony or evidence was this or that are not true findings of fact. *Maddux v. Maddux*, 40 N.E.3d 971, 975 n.4 (Ind. Ct. App. 2015). *See also Garriott v. Peters*, 878 N.E.2d 4431, 438 (Ind. Ct. App. 2007) ("A court or an administrative agency does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z.") (quoting *In re Adoption of T.J.F.*, 798 N.E.2d 867, 874 (Ind. Ct. App. 2003)), *trans. denied* (2008). We treat these findings as "mere surplusage" rather than harmful error. *Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 33 (Ind. 1981). Therefore, we will ignore findings preceded by "testified that" and limit our review to the Order's valid factual findings, regardless of whether they are labeled "findings" or "conclusions." Further, we accept unchallenged findings as true. *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997).

---

[3] In her appellant's brief, Mother failed to provide the standard of appellate review for such an order as required by Indiana Appellate Rule 46(A)(8)(b).

[20]    Initial custody determinations are governed by Indiana Code Section 31-17-2-8, which provides in relevant part,

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and
>>
>> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
>> (A) home;
>>
>> (B) school; and

> (C) community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.

[21] A trial court may award joint legal custody if it finds that joint legal custody is in the best interests of the child. Ind. Code § 31-17-2-13. Section 31-17-2-15 sets forth the matters a trial court is required to consider in determining whether joint legal custody is in the best interests of the child:

> [T]he court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:
>
> (1) the fitness and suitability of each of the persons awarded joint custody;
>
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
>
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
>
> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
>
> (5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the
home of each of the persons awarded joint custody.

[22]     Here, Mother asserts that the trial court erred in granting Father sole legal custody for medical decisions regarding the Children because (1) she and Father have historically been capable of co-parenting and reaching compromise on parenting decisions, including medical issues other than those of vaccinations and thyroid medication, and (2) Father has historically had much less involvement with the Children's medical care than Mother. She contends that there are less extreme measures than granting Father sole legal custody, such as ordering that the Children be vaccinated and granting the parties joint legal custody over other medical decisions or granting the parties joint legal custody and appointing a parenting coordinator to assist the parties in making medical decisions. Mother did not request these arrangements below, but that alone would not preclude the trial court from adopting such options as long as the arrangement was in the Children's best interests.[4]

---

[4] Father argues that Mother did not request anything other than sole legal custody for medical decisions, and therefore we should reject her argument outright as invited error. To be clear, the trial court is not precluded from entering a custody arrangement not specifically advanced by either party so long as that custody arrangement is in the child's best interests. *Richardson v. Richardson*, 34 N.E.3d 696, 704 (Ind. Ct. App. 2015).

[23] Mother attempts to argue that the parties' disagreement was mainly about vaccinations, and once that issue was resolved they would be able to cooperate. However, the trial court found that although vaccination was a major area of disagreement between the parties, the parties also disagreed as to As.B.'s thyroid medication, which health providers should treat the Children, and whether to utilize alternative medical treatments. Significantly, medical decisions for the Children was the only area in which Mother and Father declined to agree on joint custody; that is why they sought the court's intervention. Whatever degree of cooperation they were able to achieve in the past, they clearly did not believe they could cooperate on medical issues any longer, and each sought sole legal custody over those decisions. The trial court found that Mother and Father "were clear that neither believed joint legal custody would be appropriate in this case." Appealed Order at 62. The trial court also found that Mother seemed inflexible in her decision-making process, had not shown a pattern of cooperation and compromise with Father, and had frequently made unilateral health care decisions for the Children, knowing that those decisions were contrary to Father's wishes. The trial court found that the parties had already sought its intervention three times during the pendency of the case and that if they had equal decision-making authority, many disagreements over medical decisions would arise, leading to an impasse, and the trial court would "undoubtedly be required to intervene." *Id.* at 66. The trial court's findings show that it carefully considered whether any form of joint legal custody for medical decisions would be workable. As for the possibility of a parenting coordinator, Mother specifically rejected the appointment of a

parenting coordinator to assist the parties in making medical decisions for the Children, explaining that "[i]t would be another pan in the fire." Tr. Vol. 6 at 164. Accordingly, we conclude that the trial court did not clearly err in declining to award joint legal custody for medical decisions.

[24] To the extent Mother is arguing that the trial court erred in granting Father, rather than Mother, sole legal custody for medical decisions, we note that the trial court found that Father had a history of cooperation and compromise regarding the Children's health care. In addition to the above findings regarding Mother's lack of cooperation and compromise and unilateral decision-making, the trial court also made findings regarding Mother's lack of honesty and candor. Mother told An.B.'s allergist that Dr. Gollnick had concerns regarding the administration of the MMR vaccine, but Dr. Gollnick testified that she always recommended that Mother schedule the Children's vaccinations. The trial court also found that Mother testified at her deposition that she did not know Dr. Gollnick's opinion regarding vaccine medical exemptions, when in fact Mother knew that Dr. Gollnick had declined to sign vaccine medical exemptions for the Children. As to Mother's assertion that Father's involvement with the Children's medical care was limited and he is not as knowledgeable as she is regarding the Children's health care needs, the trial court considered and rejected those assertions. Although Father, as the parent who worked to provide financial resources for the family, may not have been as involved with the Children's health care as Mother, who was the Children's primary caretaker, that in itself does not call into question Father's ability to

make health-care decisions in the Children's best interests going forward. We conclude that the trial court's unchallenged findings support its decision to award Father sole legal custody of medical decisions regarding the Children.

[25] As a final matter, Mother contends that the trial court erred in ordering that the Children be vaccinated. Because we have determined that the trial court's decision to award Father sole legal custody for medical decisions is not clearly erroneous and Father wants the Children to be vaccinated, any error in the trial court's decision to order that the Children be vaccinated is harmless.

[26] Based on the foregoing, we affirm the Order granting Father sole legal custody for medical decisions regarding the Children.

[27] Affirmed.

Baker, J., and Kirsch, J., concur.