

**FILED**

Aug 21 2015, 8:54 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| Deborah M. Agard | Jaimie L. Cairns |
| Law Office of Deborah M. Agard | Cairns & Rabiola, LLP |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amanda Dillon, | August 21, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 55A04-1407-DR-344 |
| v. | Appeal from the Morgan Superior Court |
| Matthew Dillon, | The Honorable Christopher L. Burnham, Judge |
| *Appellee-Respondent* | Cause No. 55D02-1303-DR-431 |

**Baker, Judge.**

[1] Amanda Dillon (Mother) appeals the judgment of the trial court granting custody of their daughter to Matthew Dillon (Father). Finding no error, we affirm.

## Facts

[2] Mother and Father were married in 2010. They have one daughter, Maci (Daughter), whom they raised in their home in Camby. On March 7, 2013, Mother filed for divorce. Both parties sought custody of Daughter. The trial court held a preliminary hearing on April 16, 2013. Father, who had moved to Arizona before Mother filed for divorce, was not in attendance. Following the hearing, the trial court granted Mother temporary custody of Daughter pending a final custody determination. The trial court ordered Father to pay weekly child support while Daughter was in Mother's custody.

[3] On September 6, 2013, the trial court held a final dissolution hearing. By this point, Father had settled in California, where he now lives with his new wife. Following the dissolution hearing, on September 13, 2013, the trial court entered a decree dissolving the marriage, but reserved the issue of custody for future determination. The trial court found:

> Several factors have been considered by the Court in making a determination of what is in the best interest of [Daughter] regarding the most appropriate parent to assume the duties of legal and primary custodian of the child. More questions are left unanswered than were resolved at the final hearing in this case. Given the child's age [five], the geographical separation of the parents ([Father] residing in California, and [Mother] residing in Camby, Indiana) and given the unanswered questions regarding the behavioral health of the parents

and fitness to assume appropriate long-term parenting responsibilities, it is the Court's position that each parent shall be given a "test period" to demonstrate their fitness and ability to be the primary custodian of the child in the future.

Appellant's App. p. 13.

[4] Pursuant to this order, Daughter spent several months residing in Indiana with Mother and several months residing in California with Father. On June 6, 2014, the trial court held a final hearing to determine custody. Following the hearing, the trial court permitted Mother and Father to file post-hearing memoranda in support of their positions. On June 25, 2014, after considering the evidence presented at hearing, as well as the post-hearing memoranda, the trial court issued its judgment granting Father primary physical custody of Daughter. Mother now appeals.

## Discussion and Decision

[5] We are mindful of the fact that, "in custody disputes, 'the trial court is often called upon to make Solomon-like decisions in complex and sensitive matters.'" *Trost-Steffen v. Steffen*, 772 N.E.2d 500, 509 (Ind. Ct. App. 2002) (quoting *Speaker v. Speaker*, 759 N.E.2d 1174, 1179 (Ind. Ct. App. 2001)). We grant substantial deference to a trial court's decision on such matters as it "is in a position to see the parties, observe their conduct and demeanor, and hear their testimony." *Id.* For this reason, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* We will not disturb the trial court's judgment absent an abuse of discretion. *Truelove v. Truelove*, 855 N.E.2d 311, 314 (Ind. Ct. App. 2006). An

abuse of discretion occurs when the trial court's decision is clearly against the logic and effects of the facts and circumstances before it. *Id.*

[6] Initially, Mother makes two arguments regarding alleged failures to comply with Indiana Code chapter 31-17-2.2, which governs relocation in child custody cases. Mother first argues that Father failed to comply with section 31-17-2.2-1(a), which provides that "[a] relocating individual must file a notice of intent to move with the clerk of the court."[1]

[7] The relocation chapter defines "relocating individual" as "an individual who has or is seeking: (1) custody of a child; or (2) parenting time with child; and intends to move the individual's principal residence." Ind. Code § 31-9-2-107.5. Here, Mother fails to argue that Father meets this definition. In this case, Father moved before Mother filed for divorce. It is clear that Father did not have custody at the time he moved, and he could not have been "seeking custody" at the time he moved since he moved before this cause came into being.

[8] However, regardless of whether Father should be considered a "relocating individual" for purposes of the relocation chapter, it is clear that notice of his relocation pursuant to section 31-17-2.2-1 would have been superfluous in this case. This is because the notice requirement is meant to alert the trial court that

---

[1] We note that Mother did not raise this issue before the trial court and has, therefore, waived it on appeal. *In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007).

a parent has relocated so that it may modify an *existing* child custody order if necessary. *See Farag v. DeLawter*, 743 N.E.2d 366, 368 (Ind. Ct. App. 2001) (discussing the predecessor notice of relocation statute, I.C. § 31-17-2-23 (1998)). This is apparent from the plain language of the next subsection, which provides that if an individual seeks to relocate, "[u]pon motion of a party, the court shall set the matter for a hearing to *review and modify*, if appropriate, a custody order . . . ." I.C. § 31-17-2.2-1(b) (emphasis added).[2] As Father's move, which occurred before proceedings in this case began, did not require the trial court to consider modification of an existing custody order, the relocation chapter was not implicated.

[9] Mother's next argument fails for the same reason. She argues that the trial court erred in failing to comply with a section of the relocation statute providing that when the court grants a "temporary order permitting the relocation of the child pending a final hearing" it may not then base its final custody order solely on a consideration of the period during which the child was relocated. I.C. § 31-17-2.2-6. Mother argues that, in making its final custody determination, the trial court focused almost exclusively on Father's time with Daughter in California.

---

[2] Additionally, the statute makes clear throughout that it is only concerned with relocation of a parent to the extent that this entails relocation of the child. *See, e.g.* I.C. §§ 31-17-2.2-5 (nonrelocating individual may file "motion to prevent *relocation of child*"); 31-17-2.2-6 (allowing trial court to issue order "restraining or permitting *relocation of child*") (emphases added). Here, as Father had not been granted primary physical custody of Daughter at the time that he moved to California, he could not, and did not, relocate the child.

[10] Here, Mother must be arguing that the trial court's September 13, 2013, dissolution order, which provided that Mother and Father were to have joint custody until a final custody determination was made, was a "temporary order permitting relocation of the child" subject to Indiana Code section 31-17-2.2-6. However, this is not an accurate characterization of that order. The preliminary joint custody order was an exceptionally prudent move on the part of the trial court, providing each parent with a custodial "test period," from which both the parents and the trial court could learn before taking a final position on who should have primary physical custody of Daughter. As such, it necessarily preceded the initial custody order in this case. Once again, like the rest of the relocation chapter, section 31-17-2.2-6 clearly applies to situations where a parent seeks to relocate a child after an initial custody order has been entered. As Daughter's location was not fixed until the trial court entered its initial custody order on June 25, 2014, the preliminary joint custody order cannot be viewed as an order permitting her relocation.

[11] However, even were we to find that this preliminary joint custody order could be construed as the type of order to which section 31-17-2.2-6 applies, the trial court did not, in fact, fail to comply with this section. As will be seen, the trial court considered many important factors other than the time Daughter spent with Father in California. Mother's final argument now turns our attention to the trial court's thorough consideration of these factors.

[12] Mother devotes the majority of her brief to reexamining the factors considered by the trial court in making its custody determination. Indiana Code section

31-17-2-8 provides that, before making an initial child custody determination, the trial court "shall consider all relevant factors," including: the age and sex of the child; the child's interaction with parents and siblings; and the child's adjustment to her home, school, and community. The trial court "may" also consider factors enumerated in the relocation chapter, which include: the distance involved in the proposed change of residence; the hardship and expense involved for the nonrelocating individual to exercise parenting time; and the reasons provided by the relocating individual for seeking relocation. I.C. § 31-17-2.2-2.

[13] Initially, we note that neither party requested that the trial court make specific findings of fact and conclusions thereon. Appellant's Br. p. 5. "In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008). We reiterate that if any evidence supports the judgment, we will not substitute our own judgment for that of the trial court. *Id.* at 1258.[3]

[14] A review of Mother's argument makes clear that she is asking us to reweigh the evidence. Relying heavily on the factors contained in the relocation chapter,

---

[3] Mother attempts to compare her case to two recent decisions of this Court *affirming* trial court judgments that relocation was not in the child's best interests. *H.H. v. A.A.*, 3 N.E.3d 30 (Ind. Ct. App. 2014); *Myers v. Myers*, 13 N.E.3d 478 (Ind. Ct. App. 2014). Mother must be mindful of the fact that here, in asking us to *reverse* the trial court's judgment, she carries a much heavier burden.

Mother argues that "Father failed to establish legitimacy in his move to California beyond the wonderful woman he met." Appellant's Br. p. 14. First, we note that the trial court was not "required" to consider the factors enumerated in the relocation chapter. Section 31-17-2.2-2 of that chapter specifically provides that "[i]f a party provides notice of relocation at an initial hearing to determine custody, the court *may* consider the factors set forth in this chapter in the court's initial custody determination." (emphasis added). Here, the trial court had notice of Father's relocation prior to entering an initial custody order. Therefore, this provision applies.

[15] Second, even if the trial court was required to consider this factor (which is, in any event, merely one factor among many) it had evidence before it to support the conclusion that Father had moved for "legitimate" purposes. The trial court found that:

> [Father] lives in a four bedroom home in Riverside, California; the home is owned by his current spouse, Luz Dillon. [Father] grew up through the time of his high school graduation in Arizona, when he relocated to the Midwest. After [Mother] and [Father's] separation, [Father] moved back to Arizona to reside with his mother [] then later relocated to Riverside, California for employment opportunities and upon remarriage after the divorce in this case was finalized in September 2013.

Appellant's Br. p. 24. Father testified at the hearing: "I moved to Arizona and then I met my fiancé[e] and then I was able to find good job opportunities out there with trucking. And [I] also wanted to move on with my relationship with my now fiancé[e]." Tr. p. 71-72. Thus, assuming that the trial court's finding

that Father moved to California "for employment opportunities and upon remarriage" was as essential as Mother believes it to be, it is nevertheless supported by the evidence. Appellant's Br. p. 24.

[16] Mother next focuses on Daughter's adjustment to home, school, and community. The trial court took Daughter's home life in Indiana into account, noting:

> [Mother] lives in . . . the former marital residence that [Daughter] grew up in until the divorce . . . . [Mother's] life has stabilized and improved since the divorce was finalized, and she presently has stable, gainful, employment . . . . [Mother] [] and [Daughter] have extended family on [Mother's] side in the local area, and the extended family interacts regularly.

*Id.* However, the trial court also had evidence before it that Father had extended family in California and Arizona. Tr. p. 35-36. Thus, the evidence showed that Daughter's cross-country move would make it harder for her to see some members of her family while making it easier for her to see other members of her family. We find no error in the trial court's careful weighing of these competing interests.

[17] As for school, Mother takes issue with Father's decision to enroll Daughter in kindergarten at the Reach Academy, a charter school in California. *Id.* at 18. Mother contends that, had Daughter stayed in Indiana, Mother would have enrolled her at North Madison Elementary, which Mother contends is a superior school. The trial court noted that "North Madison Elementary school has an excellent record of education of its students in Indiana." *Id.* at 24.

However, the trial court heard testimony from Daughter's kindergarten teacher in California that Daughter was doing exceptionally well in her class, that she was on course to begin first grade next year, and that Father was consistently involved in Daughter's education since enrolling her at the Reach Academy. Tr. p. 9-10.

[18] This evidence supports the trial court's finding that Father has "taken an active role in [Daughter's] education, care, and development." Appellant's Br. p. 24. The trial court also found that Father was "the primary caregiver of [Daughter] when [Father] and [Mother] lived together" and that, since moving to California, "[Father] has seen to it that [Daughter's] development has been enhanced by involvement with normal childhood activities beyond school, including dance classes and involvement in Sunday school at the family's church." *Id.* Mother does not contest these findings and we cannot ignore them simply because Mother speculates that Daughter may do better in a different school.

[19] Mother also points to the fact that she will have to travel to California to visit Daughter, and that this will require her to take off work and incur travel costs. The trial court addressed this issue fully:

> Regardless of which parent is responsible as [Daughter's] primary physical custodian, the other parent will be incurring substantial costs in travel expenses for extended parenting time, holiday parenting time, and periodic parenting time with [Daughter] in her State during the school year. [Mother] and [Father's] respective incomes . . . are nearly equal. [Daughter] will need to be escorted by a parent during her plane travel to and from the other parent's home, thus incurring more

expense for plane travel, hotel lodging and car rentals by the escorting parent. [Father's] suggestion that the non-custodial parent be given an "allowance" for travel expenses to be incurred as a set-off against payment of weekly child support is appropriate and reasonable under the circumstances.

Appellant's Br. p. 25. With this in mind, the trial court entered a "zero support order," explaining that "[Mother] shall not be required to pay weekly child support to [Father] for the reason that [Mother] will be incurring significant travel expenses in exercising extended parenting time with [Daughter] . . . ." *Id.* at 26. Thus, although Mother is correct that she will incur expenses as a result of the trial court's decision, the trial court clearly dealt with this problem in a just and reasonable manner.

[20] We decline to entertain any more of Mother's requests to reweigh the evidence. The trial court's findings are supported by substantial evidence in the record, and, even were Mother able to show that one of the trial court's findings lacked sufficient support, no one factor is determinative when it comes to child custody. Such judgments "typically turn on essentially factual determinations and will be set aside if only when they are clearly erroneous." *Baxendale*, 878 N.E.2d at 1257. That is certainly not the case here. The trial court's conclusion that Daughter's interests would be best served by Father being granted primary physical custody is certainly supported by substantial evidence. In the end, the trial court noted that it had reason to believe that, despite the distance, this family relationship showed promise going forward:

> [Mother] and [Father's] communication and co-parenting skills have improved since the divorce was finalized, barring some minor hiccups

along the way. [Mother] and [Father] have done their best to keep open the lines of communication between [Daughter] and the non-custodial parent when [Daughter] was in the primary physical custody, again—barring some minor hiccups along the way. [Mother] and [Father] should be able to co-parent [Daughter] going forward, so long as they continue to keep open the lines of communication between them, and close family members, and so long as they continue to be respectful of each other's role as a parent of [Daughter]. [Daughter's] best interests come first, always.

Appellant's Br. p. 25.

To be sure, the trial court has made a difficult decision in this case. However, its order displays a breadth and depth that has not only assisted our review, but assured us that we would be foolish not to defer to its judgment. Simply put, it is clear that the trial court has thought this one through.

The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.