## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2017, 9:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donna Jameson
Greenwood, Indiana

ATTORNEY FOR APPELLEE

N. Scott Smith
Noblesville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Chamberlin, | March 29, 2017 |
| *Appellant-Respondent,* | Court of Appeals Case No. 49A02-1607-DR-1670 |
| v. | Appeal from the Marion Superior Court |
| Leslie Chamberlin, | The Honorable Cynthia J. Ayers, Judge |
| *Appellee-Petitioner* | The Honorable Mark Renner, Magistrate |
| | Trial Court Cause No. 49D04-1412-DR-40874 |

**Altice, Judge.**

**Case Summary**

[1] David Chamberlin (Father) appeals from the trial court's order dissolving his marriage to Leslie Chamberlin (Mother), in which the court awarded custody of the parties' minor children to Mother. Father raises a number of issues on appeal, which we consolidate and restate as the following issue: Did the trial court abuse its discretion in awarding custody to Mother?

[2] We affirm

## Facts & Procedural History

[3] Father and Mother were married in 2008 in Mother's home state of Colorado, but shortly thereafter moved to Father's hometown of Indianapolis. Mother and Father had three sons: D.C., born in October 2009; M.C., born in January 2012; and J.C., born in August 2014 (collectively, the Children). During the marriage, Father was the primary breadwinner and Mother was a stay-at-home parent. Although Father worked long hours and Mother was the primary caregiver, Father did care for and interact with the Children when his work schedule allowed.

[4] Mother has no extended family in Indiana, and her relationship with Father's family was strained. Additionally, both Mother and Father have diagnosed mental health conditions. Father was diagnosed with bipolar depression in 2013 and began taking medication for his condition in early 2014. Mother was diagnosed with depression in 2014, but had begun exhibiting symptoms shortly after the birth of the parties' second child in 2012. Mother's depression resulted in a lack of concern about the condition of the home, and her caregiving for the

Children suffered as well. Mother and Father did not communicate well and argued frequently, often in front of the Children. The arguments between Mother and Father occasionally led to physical altercations. By December 2014, the parties' relationship had deteriorated to the point that Mother feared being in Father's presence.

On December 9, 2014, after Father left for work, Mother packed her and the Children's belongings and left the marital residence to seek safety at a domestic violence shelter. When Father returned home from work that night, he found his family gone. He attempted to call Mother on her cell phone, but she did not answer. Father called Mother's extended family, but was unable to locate Mother and the Children. Father contacted the police, but was not allowed to report Mother and the Children missing until approximately one week later. On December 16, 2014, Father filed a petition for legal separation and a motion for an emergency hearing on child custody.

Meanwhile, Mother and the Children stayed at the shelter for a short time before going to stay with Mother's sister in Alabama. Shortly thereafter, Mother and the Children moved in with Mother's parents in Colorado, arriving on December 22 or 23, 2014. Prior to arriving at her parents' home, Mother engaged a Colorado attorney to file a petition for a protective order on her behalf in Morgan County Colorado. The Colorado court granted the petition on December 22, 2014, and it was through the issuance of this protective order that Father learned the whereabouts of Mother and Children.

[7] On January 5, 2014, Mother filed a motion to convert Father's petition for legal separation into a dissolution action. The Indiana court held a hearing on January 6, 2015, at which Mother was allowed to appear telephonically. After the presentation of evidence, the court entered an order denying the Colorado protective order full faith and credit due to a lack of personal jurisdiction. On the same day, Mother filed a petition for a protective order in Indiana alleging that Father had committed acts of domestic violence against her and the Children. The Marion Superior Court reviewed the petition and entered an ex parte order of protection as to both Mother and the Children on January 13, 2015. Father requested a hearing, which took place on January 22, 2015. On January 27, 2015, the trial court entered an order of protection on Mother's behalf, but denied an order of protection as to the Children and lifted the ex parte order insofar as it prohibited Father from communicating with the Children. The court found that Mother had established that Father had placed her in fear of physical harm, but not that he had caused her physical harm. The court further found that Mother had not established that Father had caused or threatened to cause harm to any of the Children. Father was granted the right to have telephonic contact with the Children, but was prohibited from having physical contact with them at that time. The court further indicated that it would consider the issue of Father's parenting time at the next hearing.

[8] After two continuances, the trial court held a preliminary hearing on parenting time and child support on August 4, 2015. In a written order issued on August 11, 2015, the trial court found that since arriving in Colorado, Mother had

sought and obtained counseling and therapy for herself and all three of the Children. Specifically, D.C. had attended play therapy to address aggressive behavior he had exhibited after starting preschool in Colorado. M.C. had speech delays and vision problems upon his arrival in Colorado, and he had been enrolled in speech therapy and taken to a specialist who prescribed glasses to correct his vision problems. J.C. had been slow in developing motor skills because he was very large for his age, and he was enrolled in physical therapy to assist him in developing those skills. The court found that the Children had all improved in their emotional and physical health since their arrival in Colorado, and that none of their issues had been addressed while they lived in Indiana. The court found further that "Mother had a legitimate fear of Father's behavior and conduct toward her as evidenced by the Court's protective order entry" and that "Mother's actions in taking the [C]hildren with her in her departure from the marital residence was a reasonable response to the conditions she faced." *Appellant's Appendix* at 130. The court found further that "Mother's removal of the [C]hildren from the home, given that she was the primary caregiver of the [C]hildren and given that Father was working significant hours at his job, was in the [C]hildren's best interest." *Id.* The trial court granted Father parenting time, but noted that "the lack of contact with the [C]hildren and the significant distance require[d] a limited visitation schedule." *Id.* at 131. Accordingly, the trial court granted Father visitation one weekend per month in Colorado, with Father to be responsible for all associated costs.

Father never exercised the parenting time he was granted in this order due to his work schedule and a lack of funds.[1]

[9] After two additional continuances and the appointment of custody evaluator Dr. Kevin Byrd, this matter proceeded to a three-day final hearing on May 17, 20, and 23, 2016. During the hearing, Dr. Byrd testified and his custody evaluation report was admitted into evidence. Dr. Byrd recommended that Mother be awarded physical custody of the Children. He noted that the Children had adjusted to their environment in Colorado and were receiving necessary services, and that "to uproot them again would be another huge stressor and adjustment and demand on them." *Transcript Volume 3* at 76. Dr. Byrd reported that Father's test scores suggested that his developmental expectations for the Children were not entirely age appropriate. Dr. Byrd opined, based on his testing and assessment of the parties, that "Mother had a more realistic understanding of the work required to be an effective parent, while Father remained steeped in denial, defensiveness, and grandiosity about his attachment to the [C]hildren and he had an unfounded sense of confidence in his ability to parent the [C]hildren." *Appellant's Appendix* at 27.

[10] At the conclusion of the hearing, the trial court took the matter under advisement. On July 5, 2016, the trial court issued its final dissolution decree, in which it incorporated the findings made in its previous orders and made

---

[1] Between the time Mother took the Children out of state and the entry of the dissolution decree, the only time Father had in-person contact with the Children was during the custody evaluation.

additional findings. The court awarded Mother sole legal custody and primary physical custody and awarded Father parenting time. Father now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[11] Father raises a number of arguments on appeal, all of which boil down to whether the trial court abused its discretion in awarding custody to Mother. At Mother's request, the trial court in this case entered findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). Accordingly, this court "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A). In reviewing T.R. 52(A) findings and conclusions, we apply a two-tiered standard of review, first determining whether the evidence supports the findings and then whether the findings support the judgment. *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous only if its findings of fact do not support its conclusions of law or if its conclusions of law do not support its judgment. *Id.*

[12] Moreover, "there is a well-established preference in Indiana 'for granting latitude and deference to our trial judges in family law matters.'" *Steele-Giri v.*

*Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). As our Supreme Court has explained:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

[13]　In an initial custody determination, both parents are presumed equally entitled to custody, and "[t]he court shall determine custody and enter a custody order in accordance with the best interests of the child." Ind. Code § 31-17-2-8. *See also Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945 (Ind. Ct. App. 2006). In determining the child's best interests, the trial court must consider all relevant factors, including specifically the following:

> (1) The age and sex of the child.

> (2) The wishes of the child's parent or parents.

> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

> (4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

The trial court's decisions on child custody are reviewed only for an abuse of discretion. *Sabo v. Sabo*, 858 N.E.2d 1064, 1068 (Ind. Ct. App. 2006).

[14] Father first argues that the trial court applied a presumption that Mother was entitled to custody of the Children.[2] There is nothing in the trial court's final dissolution decree expressly indicating that such a presumption was applied. Instead, Father sets forth a laundry list of complaints relating to the trial court's preliminary orders concerning custody and parenting time,[3] its orders granting Mother's motions for continuance,[4] and the court's reliance in its final decree on the Children's adjustment to their new home in Colorado, which Father argues "was brought about by Mother's egregious behavior" in taking the Children with her to Colorado without Father's knowledge or consent. *Appellant's Brief* at 16. According to Father, these facts give rise to an inference that the trial court must have applied a presumption in favor of awarding custody to Mother even though the decree made no mention of the court having done so.

---

[2] Citing *Dillon v. Dillon*, 42 N.E.3d 165 (Ind. Ct. App. 2015), Father also seems to suggest that he was entitled to a trial period during which he would have custody of the Children in order to demonstrate his ability to adequately care for them. Although the trial court in *Dillon* employed such an approach, that case in no way stands for the proposition that other trial courts are required to do so.

[3] To the extent that Father challenges the trial court's initial order denying him parenting time with the Children as contrary to law, we note that we need not address this argument because it is now moot. *See Stratton v. Stratton*, 834 N.E.2d 1146, 1149 (Ind. Ct. App. 2005) (finding issues concerning validity of trial court's preliminary custody order moot following a final custody determination because effective relief could no longer be granted).

[4] We note that some of these continuances were necessitated at least in part by Father's failure to provide discovery. Moreover, Father did not object to any motion for continuance and agreed to some of them. On appeal, Father contends that the trial court granted Mother's motions for continuance without allowing him sufficient time to object. In support of this argument, Father cites a Marion County Local Rule that he claims allowed him ten days to respond to any motion. *See* Marion LR 49-TR5-608(B) (providing that "any party objecting to a motion shall have 10 days from the date of filing to file a response, except as otherwise provided by Mass Tort Local Rule or Court order"). This rule is applicable only to "filings on the Marion County Mass Tort Litigation Docket" and is therefore inapposite here. *See* Marion LR 49-TR3-600(A).

[15]    We will not engage in this kind of speculation on appeal. The trial court is presumed to know the law and apply it correctly. *Holtzleiter v. Holtzleiter*, 944 N.E.2d 502, 506 (Ind. Ct. App. 2011). We will not abandon this presumption based solely on Father's skewed view of the evidence and the trial court's orders. There is no indication in the record that the trial court applied a presumption that Mother should be awarded custody of the Children.

[16]    Father next argues that the trial court abused its discretion in determining that awarding Mother custody was in the Children's best interests. In this vein, Father argues that it was improper for the trial court to consider the Children's adjustment to their home in Colorado, the services the Children had received there and the strides they had made as a result, and their attachment to and familiarity with Mother and her family in making its best interests determination. According to Father, such considerations were inappropriate because they were occasioned by Mother's wrongful conduct in removing the Children from Indiana without Father's knowledge or consent.

[17]    As an initial matter, we note the trial court found that Mother's fear of Father was legitimate and that her removal of the Children from Indiana was a reasonable response to the conditions she faced and in the Children's best interests. Father's arguments to the contrary are merely requests to reweigh the evidence. Moreover, the factors set forth in I.C. § 31-17-2-8 affirmatively *required* the trial court to consider the Children's adjustment to their home, school, and community, their interaction and interrelationship with their parents and any other person who may affect their best interests, and the mental

and physical health of all individuals involved—including the Children themselves—when determining the Children's best interests. Father's insistence that the trial court should not be permitted to consider the changes in these factors that have occurred since the move to Colorado amounts to an assertion that the court was required to disregard evidence critical to the determination of the Children's best interests in favor of punishing Mother for relocating with the Children. This is not a position we are willing to adopt. This court has held that "a trial court may not issue or change a custody order for the purpose of punishing a parent and that it is the child's welfare, not the parents', that controls the actions of the trial court." *Allen v. Proksch*, 832 N.E.2d 1080, 1101 n.7 (Ind. Ct. App. 2005). Although Father's frustration in this regard is understandable, the trial court's duty was to serve the best interests of the Children, not to mete out justice between their parents.

[18] Father's remaining arguments concerning the best interests of the Children are nothing more than requests to reweigh the evidence. Father first takes issue with the trial court's finding that "Mother's decision to leave Indiana was an intentional decision, but the damage done to Father's relationship with the [C]hildren was not an intentional decision on Mother's part." *Appellant's Appendix* at 27. According to Father, this finding is unsupported by the evidence because Mother's behavior after relocating demonstrated her intent to damage Father's relationship with the Children. Specifically, Father argues that Mother failed to communicate with Father concerning the Children's school and medical information, monitored Father's phone calls with the

Children and failed to ensure that the Children participated adequately in those phone calls, spoke ill of Father to the Children, and otherwise failed to foster the Children's relationship with Father.

[19] This is a blatant request to reweigh the evidence. As we noted above, the trial court found Mother's fear of Father to be legitimate and her decision to leave the home with the Children to be reasonable and in the Children's best interests. In other words, Mother left to escape what she believed to be an unsafe situation, not out of any desire to harm Father's relationship with the Children. As to Mother allegedly speaking ill of Father to the Children, we note that Mother denied having done so and the trial court made no finding to the contrary. The trial court did find that Mother's efforts to foster a relationship between Father and the Children since the move to Colorado have been lackluster, but that some of the failure to communicate was due to Mother's misunderstanding of the terms of the protective order. The court found that the situation had improved somewhat after Mother was informed that communication with Father concerning the Children was not a violation of the protective order, but that "the level of communication regarding the [C]hildren remains insufficient." *Appellant's Appendix* at 22-23. Accordingly, the trial court entered a number of specific orders requiring Mother to provide Father with medical, school, and other information concerning the Children.

[20] Father also challenges the trial court's finding that the Children's emotional health improved after moving to Colorado. There is ample evidence in the record to support the trial court's finding in this regard. Father's arguments to

the contrary are, again, an invitation to reweigh the evidence, which we will not do on appeal.

[21] The trial court made the following relevant findings with respect to the best interests factors:

> 88.  In assessing the specific factors it is clear that the ages of these three children would benefit from both parents being active in their lives.  Mother has the closest bonds with the [C]hildren. The [C]hildren are too young to express their wishes as to custody; however, the best benefit to the [C]hildren would be to have both parents in their lives.
>
> 89.  The[C]hildren had significant interaction and relationships with Father's family when they lived in Indiana and now have developed significant interactions and relationships with Mother's family now that they have lived in Colorado for the past eighteen (18) months.
>
> 90.  The [C]hildren have now adjusted to their new environment; have developed attachments to their community and for [D.C.], an adjustment to school.
>
> 91.  Both parties have diagnosed mental health problems that contributed to the breakdown of their relationship and were key in Mother's decision to leave Indiana and move to Colorado. Each party has now taken steps to address their individual issues through counseling and medication.
>
> 92.  The Court finds it significant in the evaluation of the best interest[s] of the [C]hildren to note that the parties and the [C]hildren have benefited from the separation of Mother and Father at least as it pertains to their individual improvments. Clearly, Mother and Father have improved their mental health

issues through treatment. It is also clear that the [C]hildren have improved their health and development through treatment they have been provided once they arrived in Colorado. The [C]hildren did not receive the needed care and treatment for their health and developmental issues while living as a family unit in Indiana. Once Mother and the [C]hildren arrived in Colorado, the [C]hildren's conditions became priorities.

93. The [C]hildren have improved in a number of areas since their arrival in Colorado. These improvements as well as their adjustment to their environment have convinced the Court that the best interest[s] of the [C]hildren are served by the grant of physical custody to Mother.

*Appellant's Appendix* at 30-31. The court also made findings that the Children had a more secure attachment to Mother than Father, and that only the oldest child, D.C., had a definite attachment to Father. These findings were supported by the evidence, and the findings support the court's conclusion that awarding custody to Mother was in the Children's best interests. Accordingly, the trial court did not abuse its discretion in awarding custody to Mother.

[22] Father's final argument is that Mother failed to satisfy the requirements of Ind. Code § 31-17-2.2-1, *et seq*. (the Relocation Statutes). Father concedes, however, that when Mother took the Children to Colorado in December 2014, she did not meet the statutory definition of a "relocating individual" because no custody proceeding had been initiated. *See* Ind. Code § 31-9-2-107.5 (defining "relocating individual" as an individual who "has or is seeking" custody of or parenting time with a child and who intends to move the individual's principal residence). *See also* I.C. § 31-17-2.2-1 (providing that a relocating individual

must file a notice of intent to move with the clerk of the court that "(1) issued the custody or parenting time order; or (2) if subdivision (1) does not apply, has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child"); *Dillon*, 42 N.E.3d at 167 (holding that a father who relocated prior to the initiation of dissolution proceedings did not meet the statutory definition of a relocating individual). Nevertheless, Father argues that Mother met the definition of a relocating individual when she remained in Colorado after the January 22, 2015 hearing on her petition for a protective order. This argument is unconvincing.

[23] In any event, Father has not directed our attention to anything in the record indicating that he ever argued that the Relocation Statutes did or should apply,[5] and the trial court's orders made no mention of either party having raised the issue. The trial court did not cite the Relocation Statutes in any of its orders, nor did it make any of the findings required by those statutes. Nevertheless, Father asks us to construe the trial court's finding that Mother's decision to relocate with the Children was reasonable under the circumstances as a finding Mother moved "in good faith and for a legitimate reason" as is necessary when a relocating individual files a notice of intent to relocate. *See* I.C. § 31-17-2.2-5.

[24] We will not engage in the kind of strained analysis necessary to interpret the trial court's custody order as a ruling on a petition to relocate. The trial court

---

[5] The parties apparently submitted proposed findings of fact and conclusions of law, but they have not been provided to us on appeal.

clearly did not consider the Relocation Statutes. Assuming *arguendo* that the court should have done so, Father invited the error by neglecting to raise the issue of whether the Relocation Statutes applied. *See Potter v. Houston*, 847 N.E.2d 241, 248 (Ind. Ct. App. 2006) (explaining that under the invited error doctrine, "[a] party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct"). *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 652 (Ind. Ct. App. 2002) (noting that "[a] party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court").

[25]    The trial court in this case was presented with two imperfect options when it came to custody of the Children. The trial court's findings show that it carefully weighed the evidence presented concerning the factors set forth in I.C. § 31-17-2-8 in reaching the conclusion that an award of custody to Mother was in the Children's best interests. Father essentially asks us to consider the evidence anew and substitute our judgment for that of the trial court. We must decline Father's invitation to disregard our standard of review. The trial court's judgment was supported by the evidence and we will therefore not disturb it. The trial court did not abuse its discretion in awarding custody to Mother.

[26]    Judgment affirmed.

[27]    Riley, J. and Crone, J., concur.