# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 27 2018, 6:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Bates
Schererville, Indiana

ATTORNEY FOR APPELLEE

Larry D. Stassin
Tanzillo, Stassin & Babcock, P.C.
Dyer, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael G. Tomera,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Rachel B. Tomera,<br>*Appellee-Respondent* | September 27, 2018<br><br>Court of Appeals Case No.<br>18A-DR-587<br><br>Appeal from the Lake Circuit Court<br><br>The Honorable Marissa McDermott, Judge<br><br>The Honorable Lisa A. Berdine, Magistrate<br><br>Trial Court Cause No.<br>45C01-1508-DR-691 |

**Crone, Judge.**

# Case Summary

Michael G. Tomera ("Father") appeals a trial court decree and grant of request for relocation in proceedings dissolving his marriage to Rachel B. Tomera ("Mother"). He contends that the trial court erred in granting Mother's relocation request, in calculating his weekly child support obligation, and in granting Mother's request for attorney fees. We affirm.

# Facts and Procedural History

Father is a long-time Indiana resident, and Mother was raised in Arkansas. They met in 2011 on a cruise ship. For about one year, they maintained a long-distance relationship, often meeting in the St. Louis area. Mother relocated from Arkansas to Indiana in June 2012. Mother and Father married in 2013 and had a child ("Child") in 2014.

Father is employed as a materials handler and works rotating shifts each week. His gross weekly earnings were $1246 in 2016 and $1814 in 2017, and he earned a bonus of $8206 in 2017. Mother is a certified surgical technician and works as a provisional employee for an Indiana hospital system at an hourly rate of $22.50. As a provisional employee, she works only at the times and places designated by her employer. Her weekly work schedule varies from about sixteen to thirty hours. The full-time job opportunities in the area would require her to be on call through the night.

In August 2015, Father petitioned for marital dissolution, and the parties agreed to a provisional order awarding primary physical custody to Mother, with joint

legal custody and parenting time for Father. In December 2015, Mother filed a notice of intent to relocate herself and Child to Arkansas on grounds of extended family support, rent-free housing, and full-time employment opportunities with regular work hours. She proposed a parenting time plan for Father that would approximate the total hours outlined in the agreed order. Father filed an objection to relocation and requested a partial modification of the agreed provisional order with respect to the parties' relative financial contributions. Mother filed a request for attorney fees. The trial court conducted a two-day hearing on all pending matters. Father requested written findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), and the court instructed the parties to submit proposed findings and conclusions. The trial court issued a decree dissolving the parties' marriage, granting Mother's request for relocation, denying Father's request to modify the provisional orders, setting child support and parenting time, and granting Mother's request for attorney fees. Father now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – We find no reversible error in the source and form of the trial court's findings and find the evidence sufficient to support the challenged findings.

[5] Father raises several arguments concerning the trial court's findings. Where, as here, a trial court has issued findings of fact and conclusions thereon, we apply a two-tiered standard of review, determining first whether the evidence supports

the findings and second whether the findings support the judgment. *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App. 2012), *trans. denied*. We will not set aside a trial court's findings unless they are clearly erroneous, meaning that our review of the record leaves us firmly convinced that a mistake has been made. *Id*. We give due regard to the trial court's opportunity to assess the credibility of witnesses and therefore consider only the evidence and reasonable inferences favorable to the judgment without reweighing the evidence or assessing witness credibility. *Nelson v. Nelson*, 10 N.E.3d 1283, 1285 (Ind. Ct. App. 2014). We do not defer to the trial court's conclusions of law and will find clear error if the court has applied an incorrect legal standard. *Sexton*, 970 N.E.2d at 710.

[6]     As a preliminary matter, we address Father's assertion of error with respect to the source of the trial court's findings. He correctly observes that most of the trial court's findings were adopted verbatim from Mother's proposed findings. A trial court's verbatim adoption of a party's proposed findings is not prohibited. *Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 694 (Ind. Ct. App. 2014). "Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id*. In reviewing the trial court's findings in this case, specifically comparing them to Mother's proposed findings, we found that although the court adopted a significant number of Mother's findings verbatim, many of Mother's proposed findings were either not adopted at all, adopted only in part, or changed to more accurately reflect the facts rather than opinions about the

facts. As such, the trial court cannot be said to have engaged in a wholesale adoption of Mother's findings. To the extent that Father claims that opposing counsel's submission (and the trial court's adoption) of any of Mother's findings that lack evidentiary support is tantamount to attorney misconduct and/or ex parte communications with the trial court, we find this argument to be a nonstarter.

[7] That said, we note that some of the trial court's findings are not proper findings. Instead, they are merely recitations of testimony and witness opinions. For example, some include phrases such as, "[Mother] testified," "[Father] testified," "[Witness] testified," or "[Mother] does not believe." *See*, *e.g.*, Appellant's App. Vol. 2 at 11, 15, 18, 21. Findings that indicate that the testimony or evidence was this or that are not findings of fact. *Parks v. Delaware Cty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1279 (Ind. Ct. App. 2007). Rather, a "finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Id*. (citation omitted). In other words, the "trier of fact must adopt the testimony of the witness before the 'finding' may be considered a finding of fact." *Id*. (citation omitted).

[8] Father challenges seven of the trial court's 112 findings. The remaining findings are unchallenged and therefore stand as proven. *See McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (unchallenged findings are accepted as true). Of the seven challenged findings, two are merely recitations of testimony and/or opinion and thus are not proper findings. *See* Appellant's

App. Vol. 2 at 19, 21 (findings 83 and 101). The remaining challenged findings read, in pertinent part,

32. The parties ended up in Northwest Indiana because Father thought his job was better than hers.

....

37. .... Mother enrolled Child in the 1000 books program at the library and Baby and Me classes. She takes him to Bellaboos, Fair Oaks Farm, museums, and the apple orchard.

....

42. In Arkansas where [Mother] will be residing, there are 3 hospitals (River Valley, Sparks Regional, St. Edwards) and 4 surgery centers. She worked there before she met Father and has spoken to them to be rehired. The start time is 7:30 am and she would not have to be on call so childcare is more workable.

....

70. Father would only seek custody if Mother moved; otherwise if Mother stays in Northwest Indiana he is not interested in seeking joint or full custody.

....

72. Father attempts to persuade the Court that he has constant contact with his son despite the overwhelming evidence this is untrue. Even during the few overnights a month he currently has his son, he will cancel for vacations, if Father is ill, or will have his friends over multiple times on Child's weekends.

*Id*. at 13-14, 18.

Father's objections to these findings appear to fall into two categories: (1) they are too specific and contain facts not in evidence; and (2) they are worded in a way that portrays him in a negative light. With respect to his first assertion, we agree that certain information in findings 37 and 72 is not part of the evidentiary record. However, Father does not deny that the general overarching information in each of those findings is true, that is, that Mother took Child on excursions to parks, museums, and the library and that there are hospitals close to Mother's Arkansas residence that offer regular full-time hours. As for his second assertion, we find that the record supports the findings. For example, neither party disputes that Father has a steady job with higher pay than Mother's, that Father has canceled visits due to illness and vacation, that Father had friends who have observed his interaction with Child during visits and testified as such, and that Father would not challenge physical custody if Mother and Child live in Indiana. *See* Appellant's Br. at 15 ("If [Mother] does not move back to Indiana, then [Father] asks this Court to modify custody and award physical custody of [Child] to [Father]."). In short, Father has failed to demonstrate clear error with respect to these findings.

## Section 2 – The trial court did not err in granting Mother's request to relocate.

Father asserts that the trial court erred in granting Mother's relocation request. He predicates his argument on the relocation statute, which lists factors to be considered when assessing a custodial parent's request to relocate. *See* Ind. Code § 31-17-2.2-1(b) (court shall consider distance involved, hardship and

expense for nonrelocating parent to exercise parenting time, feasibility of preserving child's relationship with nonrelocating parent, relocating parent's patterns and reasons for relocation, and child's best interest). Where the party seeking relocation "provides notice … at an initial hearing to determine custody, the court may consider the factors … in its initial custody determination." Ind. Code § 31-17-2.2-2(a). Where the nonrelocating parent objects to a relocation request, "[t]he relocating individual has the burden of proving that the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(c). "If the relocating individual meets the burden of proof under subsection (c), the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-2.2-5(d).

[11]    There are no explicit criteria for determining whether a relocation request is made in good faith and for a legitimate reason. *Gold v. Weather*, 14 N.E.3d 836, 842 (Ind. Ct. App. 2014). This Court has generally required the relocating parent to demonstrate an objective basis that is "more than a mere pretext" for relocating. *B.L. v. J.S.*, 59 N.E.3d 253, 259 (Ind. Ct. App. 2016) (quoting *T.L. v. J.L.*, 950 N.E.2d 779, 784 (Ind. Ct. App. 2011)), *trans. denied*.

> It is commonly understood in today's society that individuals move in order to live closer to family members, for financial reasons, and for employment opportunities. As such, "[w]e infer that these and similar reasons ... are what the legislature intended in requiring that relocation be for 'legitimate' and 'good faith' reasons."

*Id.* (citation omitted). "[T]he resolution of a relocation request ultimately turns on a judicial determination regarding the best interests of the child[] involved." *H.H. v. A.A.*, 3 N.E.3d 30, 36 (Ind. Ct. App. 2014), *trans. denied*.

[12]  Here, Mother's stated reasons for relocation include extended family support and favorable financial conditions, which include temporary rent-free housing as well as the opportunity for full-time employment during regular work hours. The trial court considered the evidence and determined that Mother had met her burden of establishing good faith and legitimate reasons for relocating. Father concedes that Mother's stated reasons of proximity to her family and better employment opportunities are "considered 'good faith' reasons to relocate." Appellant's Br. at 16. Notwithstanding, he claims that these stated reasons are not legitimate but are mere pretext for Mother's real reason: her "animus" toward Father. *Id*. at 17. The trial court did not agree with Father's assessment of Mother's reasons. Instead, the court found that "[Mother] has never attempted to deny or reduce [Father's] parenting time, … that [Mother] provides to him make up time although not always requested by him and further, she provides additional time upon his request." Appellant's App. Vol. 2 at 23; *see also id*. at 26 (court's conclusion that "[Mother's] Notice to Move is not motivated by malice.").

[13]  In *Gold*, 14 N.E.3d at 842, a panel of this Court affirmed the trial court's grant of the mother's request to relocate to Georgia with her child where the mother, the child's primary caregiver, demonstrated good faith and a legitimate purpose for relocating. As in this case, the mother's purposes for relocation included

proximity to her extended family, an ongoing support structure for herself and her child, living arrangements with the child's grandmother, and an increased earning capacity. *Id*. at 846. *See also Dixon v. Dixon*, 982 N.E.2d 24, 26-27 (Ind. Ct. App. 2013) (affirming grant of mother's request to relocate to Illinois with son despite father's arguments that schedule conflicts and distance of move made relocation not in son's best interest).

[14] Similarly, in *Dillon v. Dillon*, 42 N.E.3d 165, 166-67 (Ind. Ct. App. 2015), where a father moved to Arizona before the mother filed for divorce, and the mother had temporary physical custody of the couple's child, another panel of this Court affirmed a trial court judgment granting physical custody to the relocating father, who eventually settled in California with his new wife. There, the father had been the child's primary caregiver and had taken an active role in her education, care, and development, and had extended relatives in California. *Id*. at 170. Likewise, here, Mother has been Child's primary caregiver, has borne the lion's share of the parenting responsibilities on her own, and now seeks to relocate to her family home, where she has a support structure of extended relatives, and where she can improve her financial situation. Like the trial court, we do not find her reasons to be pretextual.

[15] Father also claims that the trial court erred in finding that relocation is in Child's best interest. Father raises two arguments with respect to best interest. First, he contends that because of the acrimony between him and Mother, the trial court erred in not appointing a guardian ad litem ("GAL") to represent Child's best interests. However, he concedes that he never requested the

appointment of a GAL and now claims that the trial court erred in not appointing one sua sponte. In matters involving custody, visitation, and support, the trial court's decision whether to appoint a GAL, even on request, is a matter within its sound discretion. *Matter of Paternity of A.R.R.*, 634 N.E.2d 786, 790 (Ind. Ct. App. 1994); *see also* Ind. Code § 31-15-6-1 (providing that court "may" appoint a GAL). It is the trial court's function to resolve disputes as to what is in the child's best interest, and the fact that the parents disagree over best interest is not determinative in the trial court's decision whether to appoint a GAL. *A.R.R.*, 634 N.E.2d at 786. The trial court acted within its discretion in not sua sponte appointing a GAL.

[16] Second, Father challenges the legitimacy of the provision in the relocation statute that shifts the burden to him to prove that relocation is not in Child's best interest. *See* Ind. Code § 31-17-2.2-5(d) (once relocating parent has demonstrated good faith and legitimate reason, burden shifts to nonrelocating parent to demonstrate that relocation is not in child's best interest).[1] He asks that we adopt the reasoning of the Colorado Supreme Court in *In re Marriage of Ciesluk*, 113 P.2d 135, 148 (Colo. 2005), that parents should share the burden of proof concerning a child's best interest in matters concerning a relocation request. In *Baxendale v. Raich*, 878 N.E.2d 1252, 1259 (Ind. 2008), our supreme court agreed with the *Ciesluk* court's reasoning and concluded that the trial

---

[1] To the extent that Father challenges the burden-shifting language, we find this to be a matter for the legislature.

court is to balance the various interests of the relocating parent, the nonrelocating parent, and the child, keeping in mind that the child's best interests are "powerful countervailing considerations that cannot be swept aside as irrelevant." We believe that the trial court did exactly that.

[17] In determining the best interest of the child, the trial court is to consider several statutory factors, including the child's age, sex, wishes, interaction and relationship with parents, siblings, and other persons who may significantly affect him, adjustment to home, school, and community, and mental and physical health. Ind. Code § 31-17-2-8. In arguing that relocation is not in Child's best interest, Father relies on *H.H.*, where another panel of this Court affirmed the trial court's denial of a mother's request to relocate to Hawaii with her child and new husband. 3 N.E.3d at 39. The *H.H.* court noted that although the mother had demonstrated good faith and a legitimate reason for wanting to relocate (her new husband's job in Hawaii), the record supported the trial court's conclusion that the relocation was not in the child's best interest, where the record showed that the father actively participated in the child's life, the child was thriving in her current school, the child had a strong bond to her step- and half-siblings living in Indiana, and the mother had previously been found in contempt for refusing to allow the father to exercise his parenting time. *Id.* at 37-39.

[18] Here, the trial court considered voluminous evidence and determined that Mother was Child's chief caregiver, that Father participated in parenting time but often cut his time short or canceled it altogether when he did not feel well or

wanted to go on a trip, and that Mother had good-faith, legitimate financial reasons to relocate so that she could have full-time work without overnight call. Unlike the child in *H.H.*, Child had no sibling bonds in Indiana, had a strong extended family support structure in Arkansas, which included cousins and friends his age, and had a mother with a history of promoting parenting time and a commitment to a parenting time plan for Father that would approximate the total number of days under the provisional order. In its order, the court explicitly indicated its consideration of each of the factors listed in the relocation and best interest statutes. *See* Appellant's App. Vol. 2 at 22-24. Based on our review of the record, we conclude that the court *did* assess the interests of the various parties according to the statutory factors and granted Mother's relocation request. Father simply disagrees with the outcome. His arguments amount to invitations to reweigh evidence and reassess witness credibility, which we may not do. *Nelson*, 10 N.E.3d at 1285. The evidence supports the trial court's findings, and the findings support the grant of Mother's relocation request. Therefore, we conclude that Father has failed to demonstrate clear error.

## Section 3 – The trial court did not err in calculating Father's child support obligation.

Father also claims that the trial court erred in calculating his weekly child support obligation. A trial court's calculation of child support is presumptively valid, and as such, we will reverse only where the determination is clearly

erroneous or contrary to law. *Salser v. Salser*, 75 N.E.3d 553, 559 (Ind. Ct. App. 2017).

[20] Father challenges the following aspects of the child support calculation: that Mother's rent-free housing was not imputed as income; that her weekly income was calculated based on an hourly rate of $22.50 rather than $24.30; and that he was not given any child support offset for increased travel expenses owing to Mother's relocation. With respect to imputing income to a parent, Comment 2(d) to Child Support Guideline 3A reads in pertinent part,

> Whether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities is also a fact-sensitive situation requiring careful consideration of the evidence in each case. It may be inappropriate to include as gross income occasional gifts received. However, regular and continuing payments made by a family member … that reduce the parent's costs for rent … may be the basis for imputing income. If there were specific living expenses being paid by a parent which are now being regularly and continually paid by … a third party, the assumed expenses may be considered imputed income to the parent receiving the benefit.

Here, the record shows that Mother's parents offered her the opportunity to live rent-free in the home she grew up in until her financial position improves to the point that she can afford to purchase the home. The record shows that Mother and her parents view the arrangement as a stop-gap measure, since Mother would be moving from the marital residence in Indiana, would incur moving expenses, and would need to get settled in a new job. Because there is evidence

in the record showing this to be a temporary rather than a continuing arrangement, the trial court acted within its discretion in not imputing rental income to Mother.

Next, with respect to the hourly rate used in calculating Mother's income, Father argues that the trial court failed to take into account a February 2017 increase in Mother's hourly pay rate from $22.50 to $24.30. However, the record shows that the pay increase was the result of a clerical error and was subsequently corrected. The trial court confirmed that Mother's actual hourly pay rate was $22.50. Tr. Vol. 2 at 30-33.

As for Father's increased travel expenses that will ensue from Mother's relocation, the trial court considered these and allocated them on a 75%/25% basis based on the parties' relative incomes. The record shows that the expenses will fluctuate between $100 and $750 per visit, depending on whether the parties travel by car or by plane and ever-changing gas and ticket prices. As such, the proportional division of these expenses represents not only a fair method but also one that is less speculative. The trial court did not clearly err in its allocation of travel expenses.

## Section 4 – The trial court acted within its discretion in granting Mother's request for attorney fees.

Father also contends that the trial court erred in granting Mother's request for attorney fees. We review a trial court's ruling on a petition for attorney's fees for an abuse of discretion. *Swartz v. Swartz*, 720 N.E.2d 1219, 1223 (Ind. Ct.

App. 1999). An abuse of discretion occurs if the trial court's decision clearly contravenes the logic and effect of the facts and circumstances before it or it has misinterpreted the law. *Id*.

[24] "The general rule regarding attorney fees – known as the American Rule – is that each party bears its own attorney fees." *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1006 (Ind. Ct. App. 2015). Among the exceptions to the American Rule are attorney fee awards in domestic relations matters. Indiana Code Section 31-15-10-1 allows a trial court to order a party to a marital dissolution to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding connected with the dissolution. *Ehle v. Ehle*, 737 N.E.2d 429, 437 (Ind. Ct. App. 2000). This includes amounts for legal services provided and costs incurred before the proceedings commenced or after entry of judgment. Ind. Code § 31-15-10-1(a).

[25] The purpose of the award of attorney fees is to ensure legal representation for a party in a dissolution proceeding who might not otherwise be able to afford an attorney. *Hartley v. Hartley*, 862 N.E.2d 274, 286-87 (Ind. Ct. App. 2007). Among the factors that the trial court must consider when evaluating a request for attorney fees are the parties' relative resources, economic condition, employability, and earning potential. *Id*. at 286. Where one party is "in a superior position to pay fees," an award of attorney fees is proper. *Id*. at 287.

[26] According to the weekly childcare obligation worksheet, Father's gross weekly income is approximately three times Mother's. Respondent's Ex. P. As such,

he is in a superior position to pay attorney fees. Mother's counsel submitted an attorney fee affidavit specifying an hourly billing rate of $250 and a total bill, as of the hearing date, of $16,775. Respondent's Ex. Q. The trial court ordered Father to pay $14,925 of those fees. To the extent that Father complains that a portion of those fees is attributable to Mother's filing of the relocation request, which he opposed, we remind him that the relocation statute explicitly allows the court to award reasonable attorney fees associated with the filing of relocation notices and responses/objections to relocation in accordance with Indiana Code Chapter 31-15-10. Ind. Code § 31-17-2.2-1(c). With respect to Father's arguments concerning his own financial setbacks due to the dissolution, the court considered his argument and simply found it to lack support, given that Father owned two homes, earned income and bonuses that were exponentially more than Mother's, and retained the vast majority of his pension, and given the fact that Mother would not receive a cash settlement as part of the dissolution. As for Father's argument that Mother should not be awarded attorney fees because she did not use her best efforts to find full-time employment, we remind him of the evidence showing that full-time positions in Mother's field of work in northwest Indiana would require her to be on call overnight and that her pursuit of full-time employment during regular hours without overnight call is one of the principal reasons that precipitated Mother's request to relocate to Arkansas. We find no abuse of discretion in the trial court's award of attorney fees. Accordingly, we affirm.

[27] Affirmed.

Najam, J., and Pyle, J., concur.